(A. R. D. 75)

I. ARDITI *v.* UNITED STATES

Entry Nos. 74147; 74146.

First Division, Appellate Term

(Decided June 5, 1957)

*Eugene R. Pickrell* (*Richard F. Weeks* of counsel) for the appellant.

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellee.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: This case is before us as a review of the decision in *I. Arditi* v. *United States*, 37 Cust. Ct. 466, Reap. Dec. 8610, wherein the trial judge sustained the appraised value of certain canned corned beef exported from Peru on May 21, 1952, and described on the invoices as #1 Argentine Pampa brand corned beef, packed in 12-ounce cans, 48 cans to the case.

Appellant (plaintiff below) entered the merchandise at $12.50 per case (U. S. currency), less nondutiable charges, which price is claimed to be the statutory export value (section 402 (d) of the Tariff Act of 1930), alleged to be the proper basis for appraisement, of the merchandise. The commodity in question was appraised on the basis of foreign value (section 402 (c) of the Tariff Act of 1930, as amended) at 240 Peru soles per case, net packed.

The evidence introduced by both parties is entirely documentary. Appellant introduced three affidavits, all of which were executed by the manager of the foreign exporter of the merchandise in question. Appellee introduced two documents, each titled "OPERATIONS MEMORANDUM," received by the Department of State from the American Embassy at Lima, Peru (defendant's collective exhibit A and defendant's collective exhibit B.) The decision of the trial judge contains a clear and correct review of the evidence. It is deemed unnecessary to repeat such a detailed analysis herein. We shall, therefore, refer only to such portions of the evidence as are necessary to support our conclusions.

It appears from the evidence that the canned corned beef in question had been purchased by the foreign exporter from various packing

houses in Argentina and was intended for sale in Peru, "but the Peruvian market did not absorb corned beef or canned meat" (defendant's collective exhibit A), and that, when no suitable market was found in Peru, the merchandise was sold, on April 28, 1952, to the importer (appellant) herein for $12.50 per case, c. i. f. New York.

In appellant's affidavit (plaintiff's exhibit 3), the affiant states that he was the manager of the foreign exporter from March 1, 1952, to October 5, 1952; that during the period he made all purchases and sales of canned meats, including canned corned beef in 12-ounce tins, for his firm; and that he made the sale involved herein. Continuing further, affiant states:

5. That canned corned beef 12-oz. tins, such as the merchandise described in paragraphs 3 and 4 hereof, is not usually bought and sold for home consumption in Peru.

6. That within 90 days prior to May 30, 1952, there were no sales nor offers for sale of canned cored been [sic] 12-oz. tins, such or similar to the merchandise described in paragraphs 3 and 4 hereof, for home consumption in Peru.

7. That on and prior to May 30, 1952, I freely offered the merchandise described in paragraphs 3 and 4 hereof to all possible purchasers for export to the United States at $12.50 per case, C. I. F. port of Destination in the United States.

Appellee's evidence (defendant's collective exhibit B) shows that the foreign exporter offered the canned corned beef in question for sale in the local market in Peru, but the wholesaler rejected the offer because "he had a stock of some 500 cases of corned beef on hand which he considered ample in relation to the demands of the local market." The same document, which is a communication from the attaché of the American Embassy in Lima, Peru, to the Commissioner of Customs, dated June 17, 1953 (collective exhibit B, *supra*), also states, in effect, that canned corned beef, similar to that in question, was sold in wholesale lots in the foreign market for home consumption. In this connection, the communication referred to states:

It has been ascertained that in May of 1952, Dacal y Cía., Ltda., importers, located at 114 Sáenz Peña, Callao, had similar merchandise on hand and was selling it in wholesale lots in this market at S/240.00 per case. Specifically, this was "Anglo" brand corned beef, manufactured by Frigorífico Anglo, Av. R. S. Peña 788, Buenos Aires, Argentina, in cans containing 12 oz. net, packed in wooden cases of 48 cans each, which is the type of packing in which it was received from Argentina and in which it was offered for local sale.

It is fundamental that the appealing party in an appeal for reappraisement assumes the burden of meeting every material issue involved in the case, of overcoming the statutory presumption of correctness that attaches to the appraiser's valuation, and of proving the correct value of the merchandise. *United States* v. *T. D. Downing*

*Co.*, 20 C. C. P. A. (Customs) 251, T. D. 46057. Our appellate court stated the law in its recent decision in *Kobe Import Co.* v. *United States*, 42 C. C. P. A. (Customs) 194, 196, C. A. D. 593, as follows:

* * * There is a statutory presumption that the value found by the appraiser is correct. The burden upon a party attacking an appraised value is two-fold, i. e., to prove the action of the appraiser erroneous, and to establish some other dutiable value as the proper one. In other words, it is not incumbent upon the Government to prove that the appraised value is proper, until or unless the importer shows such appraisement to be erroneous and establishes a different value in place thereof. *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, and *Kenneth Kittleson* v. *United States*, 40 C. C. P. A. (Customs) 85, C. A. D. 502, and cases cited therein.

On the basis of the present record, appellant has not sustained its statutory burden. First of all, the statement in appellant's affidavit (exhibit 3, *supra*), that, within 90 days prior to May 30, 1952, there were no sales nor offers for sale of canned corned beef, such as or similar to the merchandise in question, in the foreign market for home consumption, appears without any supporting evidentiary facts. Hence, it is a mere declaration of essential ultimate facts and is not substantial evidence. *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495. Then, too, the affidavit, as it refers to "such merchandise" not being usually bought and sold for home consumption in Peru, cannot be construed as showing the absence of sales and offers for sale of similar merchandise in the foreign market for home consumption. Furthermore, appellant's proof is defective in its limitation to the business of the foreign exporter of the canned corned beef in question. There is some evidence before us showing there were other dealers in canned corned beef in the country of exportation of the present merchandise, at the time involved herein, but appellant failed to offer any proof with respect to other dealers in such or similar merchandise to that under consideration. The omission has adverse effect on appellant's position herein. *United States* v. *International Forwarding Co., Inc.*, 27 C. C. P. A. (Customs) 21, C. A. D. 56.

The summary of the record by the trial judge, which we adopt as our own, was expressed as follows:

The evidence presented is insufficient to establish that no such or similar merchandise was offered or sold in Peru for home consumption on or about the date of exportation of the merchandise involved herein. Plaintiff has, therefore, failed to sustain his burden of proving the nonexistence of a foreign value. Consequently, it is unnecessary to determine whether or not an export value has been proved by this record. Since the presumption of correctness attaching to the appraiser's finding of value has not been overcome, the appraised value must be sustained.

On the record presented, we find as facts:

1. That the merchandise in question consists of canned corned beef, packed in 12-ounce cans, 48 cans to the case, exported from Peru on May 21, 1952.

2. That said merchandise was entered at $12.50 per case (U. S. currency), less nondutiable charges, and was appraised at 240 Peru soles per case, net packed, on the basis of foreign value.

3. That the evidence is insufficient to establish that at or about the time of exportation no such or similar merchandise was offered or sold in Peru for home consumption in the usual wholesale quantities and in the ordinary course of trade.

Accordingly, we hold as matter of law:

1. That the presumption of correctness attaching to the appraiser's finding of value has not been overcome.

2. That the proper basis for appraisement of the merchandise under consideration is foreign value, as such value is defined in section 402 (c) of the Tariff Act of 1930, as amended.

3. That such statutory value is, in each instance, the appraised value.

The judgment of the trial court is affirmed.