(Reap. Dec. 9157)

MAJESTIC SHIPPING & FORWARDING CO. ET AL. v. UNITED STATES

Entry Nos. 109133–1/2; 19514.

(Decided May 22, 1958)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiffs.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

WILSON, Judge: The merchandise involved in the case at bar consists of two shipments of tuna fish, some in oil, some in brine, not here involved, exported from Portuguese West Africa on May 20, 1953, and December 7, 1953, respectively, and entered at the port of New York.

The merchandise was invoiced and appraised as follows:

| Reappt. No. 245475–A | Tins per case | Size (ounces) | Invoices U.S.$ per case | Appraised Portuguese escudos per case |
|---|---|---|---|---|
| Solid pack | 12 | 74½ | $18. 00 | 720. 00 |
| Flakes | 12 | 74½ | 16. 00 | 540. 00 |
| Solid pack | 48 | 13 | 15. 00 | 640. 00 |
| Flakes | 48 | 13 | 13. 50 | 520. 00 |
|  |  |  |  | all above less 10% |
| Reappt. No. 245489–A |  |  |  |  |
| Solid pack | 48 | 13 | 15. 00 | 640. 00 net packed |

Plaintiffs claim the goods are properly dutiable on the basis of export value, and that such is represented by the entered values. The Government, on the other hand, maintains that the correct values for the involved merchandise are the appraised values.

The record consists of five exhibits introduced by the plaintiffs and one by the defendant herein, together with one witness each for the respective parties.

Basically, the question here for determination is whether such or similar merchandise was sold or freely offered for sale in the country of exportation for home consumption. It appears that, prior to appraisement of the involved merchandise, the appraiser made certain inquiries of the exporter relative to goods exported by his concern. Defendant's collective exhibit A is a questionnaire directed by the appraiser to the exporter relative to sales by the exporter for home consumption and for exportation to the United States. Said document contains the following:

(1) Is merchandise such as or similar to that covered by the invoice in question freely sold or offered for sale to all purchasers in the country of exportation for home consumption?

   *      *      *      *      *      *      *

(3) If such or similar merchandise is freely offered for sale or sold (within the above definitions) for home consumption, please answer the following questions:

   (a) In what quantity is the merchandise most frequently sold for home consumption?

   (b) Please furnish a current list of prices or printed price lists if issued, showing terms of sale, etc., for the quantities stated in your reply to (3) (a).

In response to the above, the exporter, in a document bearing the date of July 7, 1952, which paper is a part of defendant's collective exhibit A, stated as follows:

Question No. 1—Its [sic] similar, only with a little more salt according to our taste and its [sic] made with peanutoil.

Question No. 2—5000 cases annually.

The prices for internal consum are similar with the ones for export, less 20% for expenses for delivery fob. [This is shown as "Question No. 2" on the answer sheet, although it is obvious the answer pertains to question (3) (a), supra.]

Respecting the question whether "similar" merchandise was sold in the home market for home consumption, there appears, in the aforesaid document, the statement that "its [sic] completely the same," the only exception being, as previously noted, that, in the merchandise sold for home consumption, a little more salt was added.

It further appears that, under date of August 7, 1953, the exporter executed a document (plaintiffs' exhibit 1), in which it was stated, in response to a questionnaire sent by the appraiser, evidently with respect to the merchandise here imported, that "such" merchandise was freely offered for sale to all purchasers in the home market for home consumption. In said document, the exporter stated that "similar" merchandise was not so offered, the explanation given being, as likewise appeared in the statement made in defendant's collective exhibit A in this connection, that the European palate prefers more salt.

The appraiser, in the aforesaid questionnaire, further requested the exporter to furnish a pricelist "if such or similar merchandise is freely offered for sale to all purchasers in the home market for home consumption." Attached to said plaintiffs' exhibit 1 is a pricelist in Portuguese, which has been translated into the record (R. 12–14) as follows:

Line marked—1.  Tuna fish in peanut oil.
          2.  Cases of 12 tins of 74½-ounces, Escudos 720.
          3.  Cases of 48 tins of 13 ounces, Escudos 640.
          4.  Flakes of tuna fish in peanut oil.
          5.  Cases of 12 tins of 74½ ounces, Escudos 540.
          6.  Cases of 48 tins of 13 ounces, Escudos 520.
          7.  With 20 percent discount.
          8.  Observation:  The tuna in brine is manufactured exclusively for the United States.

Appraisement of the involved merchandise was made in accordance with the prices given in the aforesaid list. It further appears from said exhibit that the costs of packing for home consumption are included in the list prices, and that no taxes are assessed "on such or similar merchandise when sold for home consumption."

Certain declarations on the consular invoices covering the involved merchandise, sworn to before the American consul on June 2, 1953, and December 10, 1953, contain the following:

Is such or similar merchandise offered or sold in the home market for home consumption?  Yes
    If so, what taxes are applicable?  None

In the case at bar, plaintiffs have introduced in evidence a number of documents in an attempt to establish that merchandise "similar" to that here imported was not sold in the country of exportation for home consumption. Plaintiffs' exhibits 2, 3, and 5, bearing dates of August 10, 1954, November 2, 1954, and February 7, 1956, respectively, signed by the same affiant who made the representations in plaintiffs' exhibit 1, as translated, recite that merchandise manufactured in the type of cans, size 74½ ounces, as well as those of size 13 ounces, here under consideration, "never has been sold in the local market" but are "only for export," being especially manufactured in accordance with the requirements of the export market "which are entirely different from the consuming market of Angola." The affiant further recites, in plaintiffs' exhibit 5, that the pricelist, heretofore referred to in plaintiffs' exhibit 1, "did not correspond in any manner whatsoever to my sales for Angola or any other market," explaining, in this connection, that when starting production in 1949, he had originally set these prices to establish a sufficient margin of profit, but that "my agents both in the domestic market and the market of the United States persuaded me to modify my prices and adapt same to the prices of the competitors," and that quotations

were made and transactions carried out in accordance with competitive prices. In further explanation of his statement that the prices given in the pricelist supplied to the appraiser prior to appraisement did not correctly reflect the prices for the merchandise, the affiant alleged that, because of his unfamiliarity with the English language, he entrusted to outsiders the translation of the questionnaire sent to him, and that, due to an oversight, the pricelist was forwarded to the appraising officer, without making changes necessary to reflect the prices prevailing at the time of shipment of the involved goods.

Plaintiffs' witness, Mr. Fred Udelsman, employed by a concern associated with the exporter's agent in this country, and who arranged for the sale of the involved merchandise, testified that the exporter never quoted him prices in Portuguese money for shipments of the character here involved, but that prices were always quoted in dollars (U. S. currency). The witness testified that sales of the exportations here involved were made only to Mondial Co., Inc., New York City, one of the plaintiffs herein, and that said merchandise was not offered by him to anyone else in this country, stating, however, that there was no agreement under which the exporter's products could be sold only to the Mondial Co. (R. 17).

The examiner of the involved merchandise testified on behalf of the defendant that, in making his report to the appraiser, he relied on the information contained in plaintiffs' exhibits 1, 2, and 5 and that the appraiser followed his recommendation in making the appraisement.

Defendant, in the case at bar, relies *inter alia* upon the decision of the trial court in *Gallagher & Ascher, Inc. (De Lite Mfg. Co.)* v. *United States*, 65 Treas. Dec. 1747, Reap. Dec. 3350. Plaintiff there claimed that a certain item of Italian scambio tax was no part of the dutiable value, on the ground that the merchandise was made exclusively for the American market; that it had no home market value in Italy; and that the scambio tax was assessed only on such merchandise as was sold for home consumption. The court, in that case, page 1748, stated:

\* \* \* Plaintiff produced in evidence an affidavit from one Frank Corsi of the firm of Frank Corsi & Son, in which the affiant states that he is engaged in the business of purchasing agent for various importers in the United States and other countries in various lines of merchandise that are exported from Italy, especially alabaster and marble articles; that he is in touch with the Italian factories where such merchandise is made, and that he is fully conversant with the prices, subjects, designs, etc., and that owing to the particular designs or patterns or character, the merchandise which is sold to the De Lite Mfg. Co. of New York is never sold in Italy and is manufactured expressly for exportation to the United States.

In contradiction of these statements there appear on the consular invoices the following notations, signed either by Frank Corsi, or Frank Corsi, Jr., of the same firm:

This merchandise pays here, if sold in Italy, scambi tax of 2½% for home consumption only, not included in the price. No other tax affecting this invoice.

\*   \*   \*   \*   \*   \*   \*

Home-market value, taxes included, is 2½% higher than the invoice price.

The facts stated above bring this case squarely within the ruling in the *Lulis Corp.* case, reported in Reap. Dec. 3269, where it was held that in the light of such conflict the evidence was insufficient to overcome the presumption of correctness attaching to the appraiser's finding of value, citing Reap. Decs. 3025 and 3045.

The holding of the trial court in the *Gallagher & Ascher, Inc.,* case, *supra,* was subsequently passed upon by an appellate division of this court (67 Treas. Dec. 1365, Reap. Dec. 3536). In the latter case, the court, at page 1366, in reversing the holding of the trial court in Reap. Dec. 3350, *supra,* made reference therein to certain statements made by an appellate division of this court in *Lulis Corp.* v. *United States,* 65 Treas. Dec. 1670, Reap. Dec. 3282 (which was a review of the decision of the trial court in *Lulis Corp.* v. *United States,* Reap. Dec. 3025, *supra),* wherein, at page 1671, the latter court stated:

The only evidence submitted by the appellant in the court below was an affidavit made by Frank Corsi, of the firm of Corsi & Son, of Florence, Italy, whose business is that of purchasing agent for the account of various importers in the United States of Italian merchandise. He states in the affidavit that, owing to his long experience in the *exportation of this merchandise from Italy,* neither this class of merchandise nor merchandise similar to it has been sold in Italy for consumption in Italy in the usual wholesale quantities, and that it is manufactured expressly for exportation to the United States.

We do not think that the affiant's long experience in the export market would qualify him to testify in respect to the sale of this merchandise in the foreign market for home consumption. \* \* \* Furthermore this affiant stated in the invoices covering the reappraisements in question that—

This merchandise pays here scambio tax of 2½% for home consumption only, not included in the price. \* \* \* Home market value, taxes included, is 2½% higher than the invoice prices.

The appraiser has found that the book covers in question are sold in the home market and that the scambio tax is a part of the foreign-market value. The invoice statement in respect to the tax tends to confirm his finding. The evidence submitted in order to prove that there were no foreign sales of this merchandise is of little value because the affiant was testifying to something he had not shown was within this knowledge. Therefore the presumption of correctness of the appraiser's finding has not been overcome and the defendant is entitled to judgment. [Italics quoted.]

After making the above reference to the statement of the court in Reap. Dec. 3282, *supra,* the appellate division, in Reap. Dec. 3536, *supra,* stated that a comparison of the affidavit admitted in evidence in the *Gallagher & Ascher, Inc.,* case, *supra,* with the affidavit in evidence in the *Lulis Corp.* case, *supra,* showed that the affiant in the former case amply qualified himself to make the statement that "neither this class of merchandise nor merchandise similar to it has

been sold in Italy for consumption in Italy in the usual wholesale quantities," and that said merchandise "is never sold in Italy and is manufactured expressly for exportation to the United States." The court, in Reap. Dec. 3536, *supra*, page 1367, thereupon held that, in view of the detailed qualifications of the affiant in the *Gallagher & Asher, Inc.*, case, *supra*, as set out in the affidavit therein, the case was well within the decision of this court in the case of *A. J. Bracher Co., Inc. (The Danby Co.) v. United States*, 65 Treas. Dec. 1677, Reap. Dec. 3285, wherein the court held:

We are of the opinion that, inasmuch as the affiant in this case is swearing to market conditions that are within his own knowledge, the affidavit is sufficient to overcome the presumption of correctness attaching to the appraiser's finding of value, and is sufficient to prove that the 2½ per centum scambio tax is not a part of the dutiable value of the merchandise herein.

It is well settled that the appealing party in an appeal for reappraisement assumes the burden of meeting every material issue involved in the case, of overcoming the statutory presumption of correctness that attaches to the appraiser's valuation, and of proving the correct value of the merchandise. *I. Arditi v. United States*, 38 Cust. Ct. 749, A. R. D. 75. It is not incumbent upon the Government to prove that the appraised value is proper, until or unless the importer shows such appraisement to be erroneous and establishes a different value in place thereof. *Brooks Paper Company v. United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, and *Kenneth Kittleson v. United States*, 40 C. C. P. A. (Customs) 85, C. A. D. 502, and cases cited therein.

On the basis of the present record, plaintiffs have not sustained their statutory burden. As appears from the record, the exporter, prior to appraisement, indicated in response to a questionnaire forwarded by the appraiser that the merchandise he had been exporting "is almost totally in brine and for internal consum I only pack with peanutoil, * * * in sizes of 7 and 13 oz. and bigger types." It was further recited that the merchandise sold for home consumption and that sold for export were similar—"its [*sic*] completely the same"— "only with a little more salt according to our taste and its [*sic*] made with peanutoil." Subsequently, after appraisement, the exporter disclaimed these statements, averring that size 74.5-ounce and 13-ounce tins had no local market and were not there sold, but were only exported. However, these statements are not supported by any evidentiary facts. Hence, they constitute mere declarations of essential ultimate facts and are not substantial evidence. *Brooks Paper Company*, *supra*. Affiants' declaration that "such" merchandise is not bought and sold for home consumption cannot be construed as showing the absence of sales and offers for sale of similar merchandise in the foreign market for home consumption. Furthermore, plaintiffs' proof regarding the absence of sales for home consumption of

such or similar merchandise is limited to the business of the foreign exporter herein, and, in my opinion, the exporter of the involved goods is not "amply qualified" to make the statement that merchandise in the type of cans, sizes 74½ ounces and 13 ounces, "never has been sold in the local market," but is "only for export." The subsequent affidavits introduced by the plaintiffs in this case (plaintiffs' exhibits 2, 3, and 5) do not satisfactorily explain the previous statements of the exporter made in the consular invoices and in the questionnaire (plaintiffs' exhibit 1), heretofore mentioned, and do not establish that such or similar merchandise was not sold in the country of exportation for home consumption. Statements on a consular invoice "constitute some evidence of the facts stated therein," since a consular invoice is verified by the affidavit of the exporter. *United States* v. *Fisher Scientific Co.*, 73 Treas. Dec. 1375, Reap. Dec. 4219, affirmed in *Same* v. *Same*, 26 C. C. P. A. (Customs) 278, C. A. D. 27. There is nothing in this record which adequately offsets the verified statements of the exporter herein contained in the consular invoices, to the effect that such or similar merchandise was offered or sold in the home market for home consumption.

Plaintiffs, in the case at bar, have failed to offer any proof with respect to other dealers in such or similar merchandise to that under consideration. This defect in plaintiffs' proof is fatal to their claim. (*I. Arditi* v. *United States, supra.*) The exporter's explanation that the pricelist submitted by him does not truly reflect the correct prices for the merchandise is not sufficient in itself to establish that the appraised values were incorrect or to establish a statutory value at some other prices. There is no probative evidence in this record to establish the usual wholesale quantity, the ordinary course of trade, the principal market, or the price at which such or similar merchandise was, at the time of exportation, freely offered for sale and sold for home consumption and for export to the United States. There is no documentary proof or record of sales to any other purchasers. Accordingly, the evidence in the case at bar is insufficient to overcome the presumption of correctness attaching to the appraiser's finding of value.

On the record herein presented, I find as facts:

1. That the merchandise involved herein consists of tuna fish in peanut oil in tins, in sizes 13 ounces and 74.5 ounces, exported from Portuguese West Africa on May 20, 1953, and December 7, 1953.

2. That said merchandise was entered on the basis of export value (section 402 (d), Tariff Act of 1930) at various prices, United States currency, and was appraised on the basis of foreign value (section 402 (c), Tariff Act of 1930, as amended) as follows: In reappraisement No. 245475–A, solid pack, 12 tins per case, size 74½ ounces at 720 Portuguese escudos per case; flakes, 12 tins per case, size 74½ ounces

at 540 Portuguese escudos per case; solid pack, 48 tins per case, size 13 ounces, at 640 Portuguese escudos per case; flakes, 48 tins per case, size 13 ounces, at 520 Portuguese escudos per case. All these items, less 10 per centum. In reappraisement No. 245489–A, solid pack, 48 tins per case, size 13 ounces, at 640 Portuguese escudos, net packed.

3. That the evidence is insufficient to establish that, at or about the dates of exportation, no such or similar merchandise was offered or sold in the country of exportation for home consumption, in the usual wholesale quantity and in the ordinary course of trade, and at a price different from the appraised value in each case.

I conclude as a matter of law:

1. That the presumption of correctness attaching to the appraiser's finding of value has not been overcome.

2. That the proper basis for the determination of the value of the merchandise involved herein is foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended.

3. That such value is the appraised value in each case.

Judgment will be rendered accordingly.