(A.R.D. 271)

NICHOLS & COMPANY, INC. *v.* UNITED STATES

Entry Nos. 33875; 17688; 17.

## Third Division, Appellate Term

(Decided April 10, 1970)

*Edward C. Park* and *Walter E. Doherty* (*Walter E. Doherty* of counsel) for the appellant.

*William D. Ruckelshaus*, Assistant Attorney General (*Peter J. Baskin*, trial attorney), for the appellee.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges

RICHARDSON, Judge: This application is filed by the importer for a review of the decision and judgment of a single judge sitting in reappraisement in *Nichols & Company, Inc.* v. *United States*, 60 Cust. Ct. 917, Reap. Dec. 11555, and sustaining the appraised values (which were predicated on foreign value as defined in 19 U.S.C.A., section 1402(c) [section 402a(c), Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956]) for synthetic fibers exported from France and entered at Boston, Mass. Appellant contended below and contends here that export value, as defined in 19 U.S.C.A., section 1402(d) (section 402a(d), Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956) and as represented in the entered values, constitutes the proper basis for and determination of the value of the imported merchandise the subject of the three reappraisement appeals herein which were consolidated for trial below.

The merchandise covered by reappraisement appeal R65/11399 consists of nylon staple fiber invoiced and entered at U.S. $0.82 per lb. and advanced on appraisement to French francs 11.00 per kilo, less 1 percent packed. The merchandise of reappraisement appeal R65/11414 consists of acrylic staple fiber, substandard, invoiced and entered at U.S. $0.42 per lb. and advanced on appraisement to French francs 7.00 per kilo, less 1 percent packed. And the merchandise covered by reappraisement appeal R65/11417 consists of acrylic staple fiber, first grade, invoiced and entered at U.S. $0.58 per lb. and advanced on appraisement to French francs 12.00 per kilo, less 1 percent packed.

The essential facts in this case do not appear to be in dispute. The French firm of Rhodiaceta in Lyons, France, sold the merchandise at bar to the West German firm of Chemfa in Bremen, West Germany. It appears that during the period in question the acrylics were being produced in France only by the firm of Societe Crylor, and that Rhodiaceta acted as general sales agent for Crylor in the sale of the acrylic fibers to Chemfa. (Both Rhodiaceta and Crylor belonged to a big chemical group in France known as Rhone Poulenc.) Chemfa in turn resold the merchandise to Nichols & Company, Inc., appellant herein, shipping same to Nichols in the United States either from Bremen or from Rotterdam, Holland. Chemfa, which is owned by Nichols (80 percent) and two German nationals (20 percent) in copartnership, purchased the merchandise at bar from Rhodiaceta for the express purpose of reselling same to Nichols, it not being Rhodiaceta's practice to sell directly for exportation to the United States. Principals from both Nichols and Chemfa were present at Rhodiaceta's offices in Lyons, France, during the negotiations there for the purchase of this merchandise; and the fact that the merchandise was destined to be exported to Nichols was understood by all parties concerned at that time. And counsel stipulated at the trial that France was the country of exportation for the purposes of this case.

Jean Marc Vachon, general secretary of Rhodiaceta's export department, testified, among other things, that the acrylic and nylon fibers at bar were sold in France for domestic use only upon the stipulation that the purchaser could not resell them in the same state in which they were purchased, namely, as fibers. The witness further testified that this condition did not obtain with respect to Rhodiaceta's sales for exportation from France. And it was also brought out in the testimony of the witness Vachon that the acrylic fibers sold to Chemfa were of a discontinued type of merchandise that was sold only to Chemfa, and at lower prices by reason of the merchandise being "end run" merchandise.

There was placed in evidence at the trial the commercial invoices (collective exhibit 2) covering the transaction between Chemfa and Rhodiaceta which, parenthetically, was consummated in U.S. dollars and not in German deutsche marks, the official papers including two of three commercial invoices covering the transaction between Chemfa and Nichols (also consummated in U.S. dollars at the same prices shown in the invoices given to Chemfa by Rhodiaceta) as well as the customs invoices pertaining to this latter transaction, indicating France to be the country of origin of the merchandise described therein, an agreement between Chemfa and Nichols (exhibit 1) wherein the parties mutually agreed to act as commission agent for each other in the acquisition and disposition of raw materials for textiles apart from the pursuit of their separate business enterprises, and samples of commercial documents (collective exhibit 3) utilized by Rhodiaceta and Crylor in domestic transactions in France, showing the restrictions they imposed upon the use and resale of the commodities they sell.

The trial court concluded, upon the basis of the stipulation of counsel, that France was the country of exportation of the merchandise at bar, and that said merchandise had been appraised upon the basis of foreign value. With respect to the evidence, the trial court found that restrictions existed in the domestic market which precluded the existence of a French foreign value, and found that appellant had established export value as a basis for appraisement but had failed to prove an export value different from the value returned by the appraiser. The rationale of the court's opinion is as follows (pages 922–923):

> Absent contradiction or rebuttal evidence, the invoice statements might suffice to make a *prima facie* case that the invoice prices are the freely offered prices for the merchandise to anyone who wishes to buy the goods in West Germany from Chemfa for export to the United States. What is difficult to follow, is plaintiff's argument that these statements in the customs invoice supply the necessary proof as to prices at which Rhodiaceta freely offered the merchandise in France for export to the United States. The thrust of plaintiff's case is that France is the country of exportation and that Rhodiaceta was the seller. Plaintiff's proofs show Chemfa as plaintiff's affiliate, acting in the transactions in a capacity roughly comparable to that of plaintiff's commission merchant. Plaintiff's difficulty is that the facts stated in the invoices are facts as to Chemfa's sales to plaintiff in Germany. The invoice statements have no relevance to free offerings by Rhodiaceta in France for export to the United States.
>
> \*    \*    \*    \*    \*    \*    \*
>
> . . . Plaintiff has adduced no proofs as to export value in the *French* market. Hence, the presumption of correctness, as to the appraiser's finding of the amount of value, has not been overcome.

In an effort to meet the trial court's objection above noted, appellant contends here that the commercial invoices covering the merchandise at bar which were given to Chemfa by Rhodiaceta and received in evidence herein as collective exhibit 2 together with oral testimony establish a price for the merchandise in France at Rhodiaceta's plant. Appellant argues (brief, page 16):

> . . . Appellant believes that the Court . . . went astray and erred by forgetting the linkage which the evidence had established between Exhibit 2 (the invoices from Rhodiaceta to Chemfa) and the invoices from Chemfa to Nichols & Co. Inc. The trial court accepted the proof that Chemfa acted as appellant's affiliate commission merchan[t] (Opinion of the Court, P. 10), but concluded that Chemfa's invoices related to Chemfa's sales to appellant in Germany, and therefore, "The invoice statements have no relevance to free offerings by Rhodiaceta in France for export to the United States" and, accordingly, "Plaintiff has adduced no proofs as to export value in the *French* market (Opinion of the Court, P. 11). The Court's entire reference in this portion of its opinion was to Chemfa's invoices. Appellant submits that the Court overlooked or forgot that Exhibit 2 showed that the goods in Exhibit 2 and in Chemfa's invoices were one and the same, the price was the same and the evidence had established a freely negotiated price with Rhodiaceta for export of these goods from France to the United States [R. 111–112]. Chemfa's invoices merely established that Chemfa had carried out is [sic] function as a commission merchant and completed the three-way transaction by shipment of Nichols at the export price negotiated with Rhodiaceta in France [Exhibit 2, R. 111–112].

Appellee contends here that the trial court correctly concluded that appellant had failed to prove the correctness of its claimed value (although appellee's reasoning differs from the reasons assigned by the trial court). And appellee contends additionally that the trial court incorrectly held (1) that appellant had discharged its burden of rebutting the presumption that foreign value is the proper basis of appraisement, and (2) that appellant had established export value as the proper basis of appraisement. Appellant countered appellee's contentions during oral argument of this application by claiming that appellee is precluded from advancing the last two arguments because of its failure to file cross application for review and assignments of error in this case.

We agree with the trial court's conclusion that France is the country of exportation in this case. We reach this conclusion not on the basis of the stipulation of counsel, however. In the form in which counsel stipulated at the trial on the subject of the country of exportation, namely, "* * * that the merchandise here was, for the purpose of these cases, exported from France" and, "I so offer to stipulate that the country of exportation about which we are speaking is France", does

not present, in our view, stipulable facts as such, but rather itself invades the province of the court on what is essentially a question of law to be decided upon evidence or stipulated facts in lieu of evidence. *Cf. United States* v. *H. S. Dorf & Co., Inc., etc.*, 30 Cust. Ct. 664, 671, A.R.D. 28 (1953), affirmed on other grounds, *sub nom H. S. Dorf & Co., Inc., etc.* v. *United States*, 41 CCPA 183, C.A.D. 548 (1954).

In our opinion there are ample, uncontroverted facts in the record from which the legal conclusion that France was the country of exportation with respect to the merchandise at bar can be drawn. It is clear that at the time of the negotiations in Rhodiaceta's offices for the purchase of this merchandise Chemfa's role in the transaction was regarded by all parties as being that of an intermediary or conduit through whom the merchandise was to move from France to the United States. Such a state of facts evidences the requisite intention that the merchandise be exported from France to the United States. *Cf. Acker* v. *United States*, 1 Ct. Cust. Appls. 404, T.D. 31481 (1911).

Inasmuch as the merchandise at bar was appraised on the basis of foreign value the propriety of the trial court's ruling on that basis of value presents threshold considerations. Foreign value is defined in 19 U.S.C.A., section 1402(c) (section 402a(c), Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956) as follows:

> (c) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

We do not find it necessary to determine whether appellee, in the absence of filing a cross application for review and assignments of error, can argue before us that the trial court was in error in determining that foreign value is eliminated as a basis for valuation of the merchandise at bar. This question is before us for determination perforce of appellant's assignments of error, irrespective of appellee's position in the matter. It is true that in its brief and during oral argument before us appellant did not attack the trial court's conclusion to the effect that foreign value is eliminated as a factor in the case. But in assignment of error number 5 appellant claims that—

> The trial judge erred in finding that the plaintiff's proofs failed to overcome the presumption of correctness attaching to the appraised values.

The assignments of error and not the points set out in appellant's brief determine the questions presented here for appellate review. *United States* v. *J. L. Galef*, 18 CCPA 180, 184, T.D. 44377 (1930). As such, assignment of error number 5 operates to put the whole spectrum of elements entering into foreign value squarely before us for review owing to the fact that the appraised values were predicated on foreign value.

The presumption of correctness obtaining in this case with respect to the appraisement is that the appraiser found every fact to exist which is necessary to sustain the existence of a foreign value. And the burden of proof is on appellant to rebut this presumption of correctness before undertaking to establish another value for the merchandise at bar. In this connection, even if we were to agree with the court below and with appellant that the evidence adduced by appellant below negates the existence of a French foreign value for nylon and acrylic staple fibers, it is quite clear to us that the opinion below deals only with the matter of "such" merchandise. Finding of fact number 8 below states:

> That Rhodiaceta, as a member of the French monopoly group for acrylic fibers, offered for sale and sold *such* merchandise as the fibers at bar for home consumption in France only to purchasers who agreed that the fibers would be processed and would not be resold in France as fibers. [Emphasis added.]

The reference in the opinion below to "such" merchandise cannot operate to eliminate the presumed existence of "similar" merchandise as a factor in the case under the foreign value basis. *Majestic Shipping & Forwarding Co. et al.* v. *United States*, 40 Cust. Ct. 835, 840, Reap. Dec. 9157 (1958). And we are unable to find in the record below any evidence that "similar" merchandise was not freely offered for sale in France in accordance with the statutory foreign value formula at the time of exportation of the synthetic fibers at bar. In fact, testimony elicited from the witness Vachon on cross-examination suggests the possibility that "similar" merchandise was in existence at that time. With reference to a comparison of the involved fibers with others Vachon testified (R. 75) :

> Q. Let me ask you: Is it used for, basically, the same purposes—as weaving fibers, or fabrics?—A. Pardon?
> (Whereupon, the question was translated into French by the interpreter.)
> A. (Continuing) Exact.
> THE INTERPRETER: "Yes, exactly."

And in subsequent testimony given by the witness on cross-examination he indicated that the nonexistence of other manufacturers in France was confined to "acrylic fiber" (R.80). In any event, we do not know

from the instant record that the appraiser's deliberations and calculations under the foreign value formula were predicated upon Rhodiaceta's operations or those of Societe Crylor. Consequently, the record before us leaves something more to be desired in the way of evidence before the nonexistence of a French foreign value for "similar" merchandise is established.

Since appellant has failed to negate the existence of a French foreign value for "such" or "similar" merchandise, we do not reach the question of another value for the merchandise at bar. *United States* v. *International Forwarding Co., Inc., etc.*, 27 CCPA 21, 24, C.A.D. 56 (1939) ; *Majestic Shipping & Forwarding Co. et al.* v. *United States*, *supra; R. J. Saunders & Co., Inc.* v. *United States*, 55 Cust. Ct. 666, 672, Reap. Dec. 11099 (1965). Therefore, on the record before us we find as facts:

1. That the merchandise involved in these three consolidated appeals for reappraisement consists of nylon and acrylic staple fiber which was exported from France during May 1962, by the Societe Rhodiaceta of Lyons, France, and entered at the port of Boston, Mass.

2. That said merchandise was appraised under foreign value as defined in 19 U.S.C.A., section 1402(c) (section 402a(c), Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956) at various amounts in French currency per kilo, less 1 percent packed.

3. That there is no evidence in the record that at the time of exportation of said merchandise "similar" merchandise was not freely offered for sale for home consumption to all purchasers in the principal markets of France in the usual wholesale quantities and in the ordinary course of trade at prices equal to the appraised values of said merchandise.

And on these facts we conclude as matters of law:

1. That appellant has failed to rebut the presumption of correctness which attaches to the appraised values herein.

2. That foreign value as defined in 19 U.S.C.A., section 1402(c) (section 402a(c), Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956) is the proper basis for determination of the value of the merchandise covered by the three consolidated reappraisement appeals herein.

3. That such value is represented by the appraised values herein.

The judgment of the trial court is affirmed, and judgment will be entered herein accordingly.