## UNITED STATES *v.* MACHADO & CO.

**No. 5131.**—Invoice dated Buenaventura, Colombia, March 15, 1937.
Certified March 22, 1937.
Entered at New York April 1, 1937.
Entry No. 847328.

### Third Division, Appellate Term

(Decided February 21, 1941)

*Charles D. Lawrence*, Acting Assistant Attorney General (*William J. Vitale*, special attorney), for the appellant.
*Barnes, Richardson & Colburn* (*Samuel M. Richardson* of counsel) for the appellees.

Before CLINE, EVANS, and KEEFE, Judges

EVANS, Judge: This is an application for review of Reap. Dec. 4867 which involved an importation of Panama hats imported by Machado & Co. from Colombia, the date of exportation being March 22, 1937, which were entered at the port of New York on March 31, 1937.

The importer offered in evidence an affidavit made by Alejandro Cadavid E., to which the Government made formal objection and the judge sitting at the hearing made the following ruling:

Let it be filed subject to its materiality, relevancy, and competency.

Thereupon the affidavit in question was marked plaintiff's exhibit 1. It is in the following language:

ALEJANDRO CADAVID E., being duly sworn, says that he is one of the partners of A. Aristizabal & Cia. S. A., who are in the business of selling Panama Hats in the Republic of Colombia. That deponent knows a shipment of Panama

Hats made by his firm to Machado & Co., which left Buenaventura on or about the 22nd day of March, 1937, consisting of the following hats at the following prices:

| | |
|---|---|
| Gorras | $0. 18 ea. |
| Ordinarios | 0. 23 " |
| Corrientes | 0. 26 " |
| Electos | 0. 34 " |
| Selectos | 0. 41 " |
| Superiores | 0. 48 " |
| Entrefinos | 0. 59 " |

Deponent has been in the business of selling Panama hats for export to the United States for over 20 years, and definitely and positively states that the above prices at which such hats were invoiced to Machado & Co., represents the actual export prices of such merchandise to the United States at which such and similar Panama hats were freely offered for sale to all customers, in the usual course of trade, and in the usual wholesale quantities, at or about the date of sail invoice.

Deponent further says that to his knowledge such hats were not sold for domestic consumption in Colombia nor were they sold to any other countries than the United States at that period at a higher price. That your deponent further says that the main market for the sale of Panama hats to the United States is during the months of November, December and January of each season, and that that is the period when the highest prices are obtained. That after January the demand ceases because of the fact that the hats cannot be processed so that they can be used for the following season, so that the prices for such hats in the latter part of February and during March, which was the period when the shipment above mentioned was made, is necessarily lower because there is not the same demand for such merchandise. That deponent earnestly states that the price at which he sold this merchandise to Machado & Co., was the price at which he was ready and willing to sell to any importer into the United States at or about that period. Deponent further says that he did sell hats of the same quality for exportation to the United States during the months of December, 1936 and early January, 1937, at prices higher than those shown on the invoice to Machado & Co. Such prices were as follows:

| | |
|---|---|
| Gorras | $3. 38 per doz. |
| Ordinarios | 3. 74 " " |
| Corrientes | 4. 46 " " |
| Electos | 5. 06 " " |
| Selectos | 5. 90 " " |
| Superiores | 6. 86 " " |
| Entrefinos | 7. 82 " " |

That from the 11th of January on, deponent tried to sell to the same importer hats at the same price for February shipment, but the American importers would not pay the higher values.

The plaintiff offered no further testimony, whereupon the attorney for the Government made the following motion:

The Government wishes to move at this time that the plaintiff's case be dismissed for failure to make out a prima facie case in accordance with the statute.

This motion was taken under advisement and later denied.

It is the contention of the Government that, since the affidavit fails to state that similar hats were not sold for domestic consumption,

there is a failure of proof of a necessary element required to be established before the court could make a valid reappraisement.

Section 402 (a) of the Tariff Act of 1930 provides:

(a) BASIS.—For the purposes of this Act the value of imported merchandise shall be—

(1) The foreign value or the export value, whichever is higher;

\*　　　\*　　　,\*　　　\*　　　\*　　　\*　　　\*

The foreign value and the export value are defined as follows:

SEC. 402. VALUE.

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

In each of the statutory definitions of value above quoted it is noted that value may be based on the price of either "such" or "similar" merchandise. If no such, that is, identical, merchandise is offered for sale in such a manner as to fall within either definition, then it must be established whether or not similar merchandise is so offered. If similar merchandise is so offered or sold under conditions complying with the statutory definition, then it may be resorted to in finding whether or not a foreign-market value or an export value exists. If there is a failure to show that no foreign value exists for similar merchandise, how can the court legally determine that there is no foreign value under the statute? It must necessarily follow, then, that where there is a complete failure to prove that there is no similar merchandise sold or offered for sale under conditions defined in the statute there is a fatal failure of proof.

The Government, instead of relying upon its motion to dismiss, offered considerable testimony but, because of the fatal defect heretofore pointed out, we do not deem it necessary to review or pass upon the rulings in connection with the evidence submitted. The court below having sustained the importer's contention that the proper dutiable value of the merchandise is the export value, which is represented by the entered values, in spite of what we have considered a

failure of proof, as pointed out above, that opinion should be and the same is hereby reversed, and, since the record does not contain the necessary elements upon which the court can determine the value, the case is remanded to the single judge who will dismiss the appeal for the reasons stated in this opinion.

It is so ordered.