T. W. HOLT & COMPANY *v.* UNITED STATES

**No. 8059** —Entered at West Palm Beach, Fla.
Entry No. W–197.

(Decided October 23, 1951)

*John F. Kavanagh* for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Daniel I. Auster, Michael Stramiello, Jr., Joseph E. Weil,* and *Chauncey E. Wilowski*, special attorneys), for the defendant.

OLIVER, Chief Judge: This appeal for reappraisement involves the proper value of certain leather-covered split cowhide workmen's gloves exported from Cuba on October 5, 1945, and entered at the port of West Palm Beach, Fla. Two items are involved herein, item No. 110, which was invoiced at $7 per dozen pairs, and item No. 120, which was invoiced at $8 per dozen pairs. The merchandise was entered at $8 per dozen pairs for item No. 110 and $9 per dozen pairs for item No. 120, because of advances made by the appraiser, and was appraised at those values.

Nowhere in this record does the basis of the appraised value appear. The appraiser made no disclosure of the basis used in his report of value, and he was not called as a witness to testify thereto. Also, the record is silent as to any stipulation of fact or concession in regard to the proper basis of valuation.

Accordingly, the plaintiff, in order to overcome the presumption of correctness attaching to the appraised value, is faced with the burden of proof as outlined by our appellate court in *United States v. T. D. Downing Co.*, 20 C. C. P. A. (Customs) 251, T. D. 46057. The court there said:

It is sufficient here to bear in mind that the importer having appealed, it was incumbent upon it to show (1) the foreign value and (2) the export value, to the end that the higher might be taken as the dutiable value, or to show (1) a foreign value and the nonexistence of an export value, or (2) an export value and the non-existence of a foreign value. Being the appealing party, it was incumbent upon it "to meet every material issue involved in the case." *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, 42, T. D. 43324.

The plaintiff claims the proper basis of value is export value (section 402 (d), Tariff Act of 1930); that the values for the items in question are represented by the invoiced values herein; and that there is no foreign value (section 402 (c), Tariff Act of 1930, as amended).

To sustain these claims, the plaintiff must first establish either that no foreign value exists for such or similar merchandise or that the foreign value is lower than the export value.

Laszlo Fischer, the manufacturer of these gloves, called as a witness for the plaintiff, testified with reference to his sales in Cuba (R. 20–30) as follows:

Q. Did you sell similar merchandise, and by similar merchandise I mean merchandise known as number 110 and number 120, as it appears on the consular invoice, did you sell that kind of merchandise in Cuba?—A. Yes, sir.

Q. And in what quantities did you sell?—A. Ten dozen, twenty dozen; small quantities.

Q. To whom did you sell; what class of people?—A. Some sugar factories.

Q. Did you sell to any wholesalers?—A. No.

Q. Just to sugar mills?—A. That is right. They have a store and they sell to the workers.

CHIEF JUDGE OLIVER: They put them in the store and the workers buy them from the company store?

THE WITNESS: Yes.

BY MR. KAVANAGH:

Q. What prices were you getting at that time—by that time I mean in October, 1945, when you sold these gloves to these sugar mills in Cuba, for number 110 and number 120?—A. At one dollar higher, because I have to pay commission.

MR. WEIL: I move that be stricken.

CHIEF JUDGE OLIVER: You sold them in Cuba to the sugar companies for a dollar a dozen higher than the price on the consular invoice?

THE WITNESS: Yes.

\* \* \* \* \* \* \*

BY MR. KAVANAGH:

Q. How about for the home market in Cuba?—A. It was higher price.

Q. When? When was it higher?—A. You asked me at the same time what price I was selling in Cuba?

Q. Yes.—A. I was selling at the higher price in Cuba.

\* \* \* \* \* \* \*

X Q. Didn't you tell him [the customs investigator] that you would offer gloves of 110 and 120, the same type as you sold to Mr. Holt, for higher price in Cuba for use in Cuba?—A. Yes.

Defendant introduced a report of a Treasury representative (defendant's collective exhibit 2), reporting an interview with the witness, which states that Mr. Fischer insisted that he had made no sales and had accepted no orders for the home market in Cuba for workmen's cowhide leather gloves, during the involved period, because his entire time was devoted to filling orders for exportation to the United States.

A customs agent's report (defendant's collective exhibit 1) indicates that this manufacturer made no sales of either of these qualities of gloves in Cuba after May 29, 1945.

The evidence supports the conclusion that no foreign value has been established by the business of this manufacturer, since he made no sales after May 29, 1945, which date is too remote from the involved date of exportation, October 5, 1945. Mr. Fischer testified, however, that whatever sales he had made for home consumption in Cuba were to sugar factories which maintain company stores and resell the gloves to workmen. The quantities involved in those sales were substantial and are sufficient to cause me to feel that there might have been a market for these gloves in Cuba, in the absence of proof to the contrary. The customs agent's report (defendant's collective exhibit 1) reports sales of quantities as great as 50 dozen pairs of manufacturer's No. 12. Prior to July 1945, manufacturer's No. 120 was known as No. 12.

Mr. Fischer also testified that there were homeworkers in Cuba who manufactured work gloves and that he had, at times, purchased from them when his own factory was unable to fill an order because

it did not have a sufficient supply. The fact that the witness mixed his own gloves with those purchased by him from these homeworkers to complete orders, indicates that the gloves manufactured by the homeworkers, for tariff purposes, were probably "similar" to those manufactured by the witness. There is no proof in this record that the gloves manufactured by the homeworkers in Cuba are not similar to those manufactured by this exporter.

The mere fact that merchandise is manufactured by homeworkers, is not sufficient to prove that their sales do not establish the market value in Cuba for home consumption, particularly during a period of approximately 4 months when Laszlo Fischer, who was the only manufacturer of these items in Cuba other than the homeworkers, made no sales in the home market for the reason that the entire output of his factory was used to fill orders for exportation to the United States.

Until it has been proved that there is no foreign value for similar merchandise in Cuba, or that the foreign value of similar merchandise is less than the export value thereof, it is not necessary to determine whether or not an export value has been proved by this record. In *United States* v. *Machado & Co.*, 6 Cust. Ct. 802, Reap. Dec. 5131, the court said:

\* \* \* In each of the statutory definitions of value above quoted it is noted that value may be based on the price of either "such" or "similar" merchandise. If no such, that is, identical, merchandise is offered for sale in such a manner as to fall within either definition, then it must be established whether or not similar merchandise is so offered. If similar merchandise is so offered or sold under conditions complying with the statutory definition, then it may be resorted to in finding whether or not a foreign-market value or an export value exists. If there is a failure to show that no foreign value exists for similar merchandise, how can the court legally determine that there is no foreign value under the statute? It must necessarily follow, then, that where there is a complete failure to prove that there is no similar merchandise sold or offered for sale under conditions defined in the statute there is a fatal failure of proof.

Also see *United States* v. *Stone & Downer Corp.*, 2 Cust. Ct. 836, Reap. Dec. 4516.

Since there is no showing in this record that similar merchandise was not sold or offered for sale in Cuba for home consumption on or about the date of exportation of the merchandise herein involved, the plaintiff has failed to sustain its burden of proving the nonexistence of a foreign value and the application of an export value as a proper basis of valuation. The presumption of correctness attaching to the appraiser's finding of value has not, therefore, been overcome.

On this record, I find the values of the merchandise to be the values found by the appraiser.

Judgment will be rendered accordingly.