(Reap. Dec. 10099)

GEO. S. BUSH & CO., INC. *v.* UNITED STATES

Entry No. 2078, etc.

(Decided November 6, 1961)

*Lawrence & Tuttle (Edward N. Glad* of counsel) for the plaintiff.
*William H. Orrick, Jr.,* Assistant Attorney General (*Morris Braverman,* trial attorney), for the defendant.

WILSON, Judge: The merchandise covered by the involved appeals, which were consolidated for trial, consists of certain chains for the transmission of power, in five different sizes, imported from Japan in the period from May 1951 through January 1952.

The chains in question were appraised on the basis of United States value, as defined in section 402(e) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. It was stipulated that, during the period in question, there was no foreign or export value, as defined by section 402, Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, for such or similar merchandise. Plaintiff further concedes that United States value is the correct basis of appraisement but maintains that the values taken by the appraiser are not the proper values under such basis. Specifically, the plaintiff contends that the proper appraised values for these chains should be calculated on the importer's so-called resale prices and not upon the resale prices of the company in the United States which purchased the merchandise from the importer herein. The Government, on the other hand, contends that the sale of the imported merchandise by the importer to the purchaser in the United States was not a sale pursuant to free offers to all purchasers.

The facts in these reappraisement appeals are, for the most part, not in dispute. Beginning in June 1951 and continuing through January 1952, Schnitzer Brothers and Schnitzer Steel Products Co., two corporations doing business in the State of Oregon, imported from two Japanese firms, Daido Kogyo Co., Ltd., manufacturing a product known at the DK brand, and the Tsubakimoto Chain Mfg. Co., Ltd., a quantity of heavy roller or power chains of five different sizes. All of the imported merchandise was sold to the Alaska Junk Co., another corporation doing business in Portland, Oreg. This last-named corporation was, at the time of the sales in question, closely affiliated with the Schnitzer corporations, and, at the time of the trial, Schnitzer Steel owned the controlling interest in the Alaska Junk Co. (R. 50). When the merchandise in question was sold by the Schnitzer corporations to the Alaska Junk Co., the Schnitzer family was a stockholder in the latter company, and at least two of the Schnitzer brothers (owners of the Schnitzer corporations) were officers of the Alaska Junk Co., as appears from the following testimony:

X Q. At the time of the sale of this merchandise from Schnitzer Brothers to Alaska Junk, I take it that you and Manuel were members of the firm of Alaska Junk?—A. I was a stockholder. I was left an interest in that company by my father, when he died.

X Q. Were you not an officer?—A. I believe I was an officer.

JUDGE WILSON: Well, what position did you hold?

THE WITNESS: Secretary, I believe; or assistant secretary.

X Q. Was Manuel an officer of Schnitzer Brothers?—A. Yes.

X Q. And, was Manuel an officer of Alaska Junk?—A. Yes. [R. 50–51.]

While it is claimed by the Schnitzers, the real parties in interest in these appeals, that the imported merchandise, all of which was sold to the Alaska Junk Co., was freely offered for sale for domestic consumption to any and all purchasers in the ordinary course of trade, the record does not bear out this contention.

The sole claim of the plaintiff is that the appraiser used the wrong United States value, so, in this case, there was cast upon the plaintiff the burden of showing not only that the appraiser adopted the incorrect United States value in making his appraisement, but the additional burden of establishing what the correct United States value was at the time in question. In attempting to discharge this burden of proof, the plaintiff began by offering evidence that the Schnitzer corporations started importing power chains of the kind here involved in January 1951, prior to the date of any of the importations now under consideration (R. 20). In an apparent attempt to establish that the earlier importations were prototype merchandise, which could be used in establishing a United States value for the merchandise now under consideration, Leonard Schnitzer, one of the Schnitzer brothers and an officer at the time in each of the three Oregon corporations, hereinbefore referred to, testified as follows:

Q. And, to whom did you offer this merchandise in the United States?— A. We offered it generally throughout the trade; contacted the various wholesalers and distributors of the product here.

Q. Did you restrict it to anybody?—A. No, sir. We offered it to all.

Q. And, at what price, or prices, did you offer this merchandise?—A. We never got to the point of negotiating prices when we offered material, because we found that once we tried to sell the stuff, there was a hesitancy on the part of the trade to buy the material. They were afraid of the quality. It had never been imported from any foreign company, to my knowledge, at that time. * * * and we just never got to the point where people would buy it in large quantities, which was the way we had to sell it in order to make any profit.

Q. What outward steps, or outward signs were there, to show that you were offering this to anybody? Did you write letters, or did you go see people, or do what?—A. We wrote letters. I wrote letters to Montgomery Ward, and Sears Roebuck, who were doing a big volume in that product. There was a Japanese Buying Trade Fair that the Seattle Trade Fair organized in Seattle.

Q. What was the date of that trade fair?—A. I believe it was in January, or February, of 1951.

Q. And, what did you do there?—A. We had a large booth, with the display of the chain, photographs, brochures. We had sales personnel there. There were various trading companies, manufacturers, distributors, of the same types of products, and all the other imported products there.

Q. Did you hold yourself out as the distributor throughout the United States of this type of chain?—A. Yes, sir.

Q. Did you have any signs in which you held yourself out as such to the public?—A. Correct, sir. [R. 20-22.]

The witness then produced a large sign (plaintiff's exhibit 3) which, he testified, was displayed at the Seattle fair. The complete wording of the sign is as follows:

TSUBAKI
ROLLER CHAIN DRIVE
DISTRIBUTED BY
SCHNITZER BROTHERS
PORTLAND 10, ORE.

The witness further testified that the Schnitzers received numerous inquiries as a result of the display at the Seattle fair, but that no sales or even offers to sell or buy resulted. He further stated that Schnitzer Brothers contacted other large equipment dealers (no names given) but were never able to make any sales. There is nothing in the testimony anywhere to indicate that the merchandise or any part of it was ever offered at any definite price to anybody at any time, except the Alaska Junk Co. No letters or copies of letters were produced in court showing offers of sale to anybody else. Concerning the sales to the Alaska Junk Co., the witness testified as follows:

Q. To whom did you finally sell this merchandise?—A. Alaska Junk at that time was in the sawmill machinery manufacturing business, and distributing motors, and power gear drives, power assemblies, rubber belting, and the allied lines, and they bought large quantities of it from Schnitzer Brothers.

Q. Now, at what price did you first offer this merchandise to Alaska Junk?—A. We offered it to them at our cost.

Q. Was there any markup?—A. There was a slight markup, to take care of some of our expense.

Q. What was this markup originally?—A. Originally it was around 14%.

Q. And, what did it finally get down to?—A. At the end it got down to nothing. [R. 23–24.]

The witness then produced what he claimed to be certain original records from the office of Schnitzer Brothers. Plaintiff's collective exhibit 4 purports to show the sale of 3,500 feet of power transmission roller chains by Schnitzer Brothers to Alaska Junk Co., 2,000 feet of ASA No. 120 chain at $2,438.75/M, and 1,500 feet of ASA No. 140 chain at $2,910.00/M. It should be pointed out that it was agreed that the unit for valuation was 1 foot. This invoice allegedly involves merchandise covered by entry 2078 under reappraisement 255534–A (an importation not involved directly in these proceedings), shipped from Yokohama, Japan, May 1, 1951, and received in Portland on May 21, 1951. The shipper of the merchandise was Asano Bussan Co. and the manufacturer was Tsubakimoto Chain Mfg. Co., Ltd., of Osaka, Japan. The 2,000 feet of No. 120 power transmission roller chain was entered at $2,438.75 per thousand feet, or $2.438 per

foot, and was appraised at $2.836 per foot; the 1,500 feet of No. 140 power transmission roller chain was entered at $2,910.00 per thousand feet, or $2.910 per foot, and was appraised at $3.405 per foot. Plaintiff's collective exhibit 4, the invoice of sale from Schnitzer Brothers to Alaska Junk Co., shows the same unit price as the entered value, plus numerous charges consisting of: Consular fee, $2.50; bank fee, $34.67; 10 per centum commission, $927.97; ocean freight, $342.61; customs and brokerage, $1,423.15, for a grand total of $11,973.40, whereas the original total of the entered value was $9,242.50.

Plaintiff's collective exhibit 13 relates to merchandise imported in April 1951 and purportedly sold to Alaska Junk Co. on May 29, 1951.

The importer relied upon the foregoing transactions, and such transactions alone, to establish prototype sales for United States value. However, the evidence falls far short of establishing the essential elements required by law for proof of United States value, defined in section 402(e) of the Tariff Act of 1930, as amended, *supra*, as follows:

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

It is well settled that United States value can be established only by the United States value of prototype merchandise previously imported and available for sale in this country at the time of exportation of the merchandise being valued.

In a well-considered opinion, this court, in the case of *E. H. Corrigan* v. *United States*, 27 Cust. Ct. 436, Reap. Dec. 8046, held, at page 439, that:

* * * United States value relates to prototype merchandise available for sale in this country at the time of exportation of the merchandise being valued * * *.

This same case makes reference to and reviews the holdings in a number of cases decided by the Court of Customs and Patent Appeals, including *United States* v. *G. W. Sheldon & Co.*, 23 C.C.P.A. (Customs) 245, T.D. 48108; *United States* v. *Collin & Gissel*, 29 C.C.P.A. (Customs) 96, C.A.D. 176; *United States* v. *New York Merchandise*

*Co., Inc.*, 31 C.C.P.A. (Customs) 213, C.A.D. 274; *United States* v. *Robert Reiner, Inc.*, 35 C.C.P.A. (Customs) 50, C.A.D. 370.

In discussing the method to be followed in ascertaining *United States* value, the court, in the *Sheldon* case, *supra*, at page 249, set forth the following rule:

\* \* \* The said value is the price at which such or similar imported merchandise is *freely offered for sale*, packed, in the principal market of the United States, to all purchasers, *at the time of exportation* of the merchandise which is being valued. This could, of course, be established only by such or similar goods which had been previously imported and were being freely offered for sale at the time of export of the goods being valued. [Italics quoted.]

In the *New York Merchandise Co.* case, *supra*, the court, in considering the construction of section 402(e), Tariff Act of 1930, page 218, held as follows:

The law upon the construction of section 402(e), *supra*, is, we think, fairly well settled, and without quoting extensively from the foregoing cited cases, we think the following principles applicable to United States value are definitely settled: First, the value of the imported merchandise to be arrived at must be based upon the price at which such or similar *previously imported* merchandise is freely offered for sale to all purchasers, packed ready for delivery, etc., at the time of exportation of the imported merchandise. Second, the phrase "at the time of exportation" does not necessarily mean the hour or the day of exportation, but a time near enough to the date of exportation and under such circumstances as will reflect the price of the goods on the date of exportation. It is obvious that no definite period prior or subsequent to the exportation can be fixed as a standard for all cases. A fluctuating market, which might be brought about by many reasons, might make a date of sale or offer in this country prior or subsequent to the date of exportation an improper one to accept in determining the question here involved. On the other hand, the proof might show a steady, unvarying market or other conditions which would make a date months removed from the date of exportation a proper one to reflect what the price was on the date of exportation.

In considering the importance of arriving at the right conclusion in the instant case on the decision of this important and sharply controverted question, we think it not improper to say, and it has been elsewhere often said, that in arriving at United States value or the cost of production under the act of 1930 of [*sic*] other acts similar in character, we must take into consideration the fact that Congress was trying, by including certain items and excluding others, to arrive at what might be comparable to a foreign value or an export value if there had been one, and that Congress sought to apply as a settled tariff policy the foreign or export value whenever it was applicable, in preference to the United States value, which was obviously a less satisfactory basis for arriving at the final appraised value. Under such circumstances, in arriving at a determination as to whether United States value has been shown, it should clearly appear from the record that the facts fully warrant its application. [Italics quoted.]

The court, in the case of *United States* v. *Robert Reiner, Inc.*, *supra*, quotes at considerable length from the decision of the *New*

*York Merchandise Co.* case, *supra*, and follows the holdings in that case with reference to the definition and ascertainment of United States value.

There is no evidence whatever that this so-called prototype merchandise was ever freely offered at any particular price in the open market to all purchasers. It was sold to the Alaska Junk Co. as were the chains now before the court. The various statements of the witness Schnitzer that the said merchandise was freely offered in the open market to all purchasers, without giving any actual sales or the making or receipt of any offers at any particular price, certainly fall far short of the proof required in this case.

Subsequent sales of the merchandise later imported to the same buyer, Alaska Junk Co., without showing any actual sales to other buyers or any actual offers of sale or purchase at a given price, are fatally deficient in proof. It may be said that the court was not impressed with the veracity of the witness Schnitzer. The court does not believe that the purported sales by the Schnitzers to their affiliated company, Alaska Junk Co., were *bona fide* sales in the open market, but, from all the evidence, is definitely of the opinion that the so-called sales from the Schnitzers to a company which was intertwined in stockholder ownership and officers with the seller were not actual sales in the open market but were paper sales definitely intended to be used as a basis for attacking the appraised value as fixed by the United States appraiser. Evidently, in determining true United States value, the appraiser used as a basis the resales of the merchandise made by the Alaska Junk Co. (R. 9). It may be said that, if the testimony of Mr. Schnitzer be accepted at face value, there still is no sufficient proof of the essential elements to prove plaintiff's case.

The law has long been settled in reappraisement cases concerning the burden cast upon one who challenges the correctness of the appraiser's valuation. 28 U.S.C., section 2633, provides as follows:

The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise.

Numerous decisions by this court and the United States Court of Customs and Patent Appeals have held that the appealing party, in order to sustain his burden of proof, must not only overcome this statutory presumption, but—

* * * it is incumbent upon appellant, the party challenging the value found by the appraiser in the first instance, to prove the action of the appraiser was erroneous and to establish some other dutiable value as the proper one. To do this, that party must meet every material issue involved in the case, and if he fails to do so the value fixed by the appraiser remains in full force and effect.

*Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495; *Kobe Import Co.* v. *United States*, 31 Cust. Ct. 456, A.R.D. 30; *G. & H. Transport Co., Inc.* v. *United States*, 27 C.C.P.A. (Customs) 159, C.A.D. 78; *West End Auto Wrecking Co., Inc.* v. *United States*, 31 Cust. Ct. 465, A.R.D. 31.

In the *West End Auto* case, *supra*, page 467, the court held:

> It is well recognized that the party appealing for a reappraisement has the twofold burden of not only overcoming the statutory presumption of correctness attaching to the value found by the appraiser, but also of establishing the correct dutiable value of the merchandise in order to prevail. *Sears, Roebuck & Co.* v. *United States*, 31 C.C.P.A. (Customs) 36, C.A.D. 246; *Harry Garbey* v. *United States*, 24 C.C.P.A. (Customs) 48, T.D. 48332.

The court is of the opinion that the plaintiff has failed to overcome the presumption of correctness which attaches to the appraisement as made by the United States and has further failed to show any other basis for determining the United States value of the merchandise in question at the time of exportation.

For the reasons above set forth, I find as matters of fact:

1. That the merchandise covered by these appeals to reappraisement consists of certain chains for the transmission of power, in five different sizes, imported from Japan from May 1951 through January 1952.

2. That, at the several times of exportation, such or similar merchandise was not freely offered in Japan for sale to all purchasers for home consumption, nor for exportation to the United States, in accordance with section 402(c) or 402(d) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

3. That said merchandise was appraised on the basis of United States value.

4. That the evidence adduced by the plaintiff fails to establish that the appraised values are erroneous or that other values claimed by the plaintiff are correct.

I conclude as matters of law:

1. That plaintiff has failed to overcome the presumption of correctness attaching to the values found by the appraiser.

2. That United States value, as defined in section 402(e) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, is the proper basis of value for the merchandise covered by the instant appeals for reappraisement.

3. That such value is the value returned by the appraiser in each case.