(Reap. Dec. 11099)

R. J. SAUNDERS & Co., INC. *v.* UNITED STATES

Entry No. 70424.

(Decided November 8, 1965)

*Sharretts, Paley & Carter* (*Melvin E. Lazar* and *Gail T. Cumins* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

WILSON, Judge: The merchandise involved in the above-mentioned appeal for reappraisement is Thiourea, a chemical manufactured by Miike Gosei Chemical Industry Co., Ltd., of Japan, and exported therefrom on or about March 11, 1958, by Nippon Trading Co., Ltd., the exclusive export agent of the manufacturer.

The merchandise in question, specified on the official final list promulgated by the Secretary of the Treasury, T.D. 54521, was appraised on the basis of foreign value, as defined in section 402a(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165. The importer claims that United States value, as defined in section 402a(e) of the Tariff Act of 1930, as amended, *supra*, is the proper basis for the appraisement of the merchandise.

The pertinent statutes herein involved are as follows:

Tariff Act of 1930, as amended by the Customs Simplification Act of 1956:

[Section 402a(c)] FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

[Section 402a(d)] EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

[Section 402a(e)] UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

It was stipulated and agreed by and between counsel for the respective parties hereto that should the court find that there was no foreign value or export value for such or similar Thiourea, as such values are defined in section 402a(c) and section 402a(d) of the Tariff Act of 1930, as amended, *supra*, respectively, then, the proper basis of value

for appraisement of the merchandise is United States value, section 402a(e) of the Tariff Act of 1930, as amended, *supra*, and that said United States value is $0.2584 per pound.

A number of documents and exhibits, the relevant parts of which, other than the stipulation above referred to (plaintiff's exhibit 7), are as follows:

Plaintiff's exhibits 1 and 6 are affidavits of Mr. Sanei Katakura, chief of the medical section, medical department of the Mitsui Chemical Industry Co., Ltd., wherein he states as follows: That, during 1957 and subsequent thereto, he was employed by Miike Gosei Chemical Industrial Co., Ltd., which was purchased by and merged with Mitsui Chemical Industry Co., Ltd., in 1962; that he had personal knowledge of the conditions and terms under which Miike Gosei sold Thiourea both for home consumption and for exportation to the United States; that sales of Thiourea for home consumption were to dealers or subdealers and that no sales were made directly to consumers; that the prices at which these sales were made varied from class to class of purchasers and within each class, depending on various circumstances including the bargaining ability of the purchaser and the terms of payment; that, with respect to sales to consumers by dealers, there were various territorial restrictions, dealers in the various district sales offices being permitted to sell only to consumers located in the territory of their district office; sales of Thiourea by Miike Gosei for exportation to the United States were made through Nippon Trading Co., Ltd., its exclusive agent.

Plaintiff's exhibits 2 and 11 are affidavits of Mr. Akira Shiose, staff of Sakai Chemical Industry Co., Ltd., a manufacturer and seller of Thiourea, which is substantially to the same effect as plaintiff's exhibits 1 and 6, except that Mr. Shiose states that his firm's sales for exportation to the United States were made through Sakai Trading Co., Ltd.

Plaintiff's exhibit 3 is an affidavit of Mr. Tsutomu Fukunaga, formerly managing director of Nippon Trading Co., Ltd., referring to a questionnaire from the customs examiner at New York where, in answer to an inquiry, Mr. Fukunaga stated that Thiourea was freely offered for sale to all purchasers in the home market for home consumption. In explanation, the affiant, in said exhibit 3, stated as follows:

* * * When I answered "Yes" to this it was answered in the sense that Miike Gosei Chemical Industry Co., Ltd. was willing to sell Thiourea to any dealer or sub-dealer within his sales territory and who was agreeable to paying the price which was always determined by negotiation. It is my understanding this meant freely offered even though the dealers could only sell to consumers situated within their sales territories and even though the price varied between classes of purchasers and also within the same class.

Plaintiff's exhibit 4 is an affidavit of Mr. Yoshihei Murayama, chief of the chemicals department of Nippon Chemical Industrial Co., Ltd., another manufacturer and seller of Thiourea, which is also substantially to the same effect as plaintiff's exhibits 1 and 6, except that Mr. Murayama states that his firm's sales for exportation to the United States were made through Ataka & Co., Ltd.

Plaintiff's exhibit 5 is an affidavit of Mr. Keinosuke Doi, managing director of Nippon Trading Co., Ltd., Tokyo, Japan. In said affidavit, Mr. Doi refers to a letter, dated August 9, 1958, written by him to Baird Chemical Corp., New York, N.Y. (defendant's exhibit A) wherein it appears that Mr. Doi stated to that company that "Miike Gosei Chemical Industry Co., Ltd., freely offer Thiourea for home consumption." In explanation, the affiant, in said exhibit 5, states as follows:

When I stated that Miike Gosei Chemical Industry Co., Ltd. freely offered Thiourea for home consumption, it was said in the sense that Miike Gosei Chemical Industry Co., Ltd. would sell to any dealer or sub-dealer in his particular territory who was willing to pay the price which was always arrived at by negotiation. Dealers could only sell to consumers located within their sales district. To me, this meant freely offered even though there were restrictions as I just stated, and even though the price did differ between classes of purchasers and within the same class.

In plaintiff's exhibit 8, the same affiant states that "We limit our offers and sales of thiourea for exportation to the United States to our exclusive purchaser in the United States Baird Chemical Industries, Inc."

Plaintiff's exhibits 9 and 10 are affidavits of Mr. Hisasi Kawamoto, assistant export manager of Sakai Trading Co., Ltd., Osaka, Japan, and of Mr. Hiroaki Muro, assistant chief of export section, chemical department of Ataka & Co., Ltd., Tokyo, Japan, respectively, which companies are the exclusive agents of two of the three Japanese manufacturers of Thiourea for exportation of said product to the United States. In each of these affidavits, the affiants stated that, during the years 1957 and subsequent thereto, Thiourea was not freely offered or sold for exportation to the United States to anyone who wished to buy, and that such offers and sales of Thiourea by the exclusive export agents were limited to certain exclusive United States purchasers.

The only evidence introduced by the defendant was exhibit A, as to which previous reference has been made. It consists of a letter from Baird Chemical Corp., dated September 5, 1958, addressed to the United States appraiser of merchandise at New York, transmitting a letter from Nippon Trading Co., Ltd., dated August 9, 1958, containing information requested by the appraiser "regarding the sale of Thiourea for home consumption in Japan." The letter states from information received from Nippon Trading Co., Ltd., that "Miike

Gosei Chemical Industry Co., Ltd., freely offers Thiourea for home consumption," and said letter has attached to it "The Delivery Particular List" of sales of Thiourea made by the Miike Gosei Co. for home consumption during 1957 and 1958. At the bottom of said list of sales, appears the following statement:

(1) (A)  Price: the prices sold to all dealers are @ Y230.00 per kg. at manufacturer's warehouse and the prices sold to all consumers are @ Y240/250.00 per kg. at consumer's factory, according to the quantity.

The question presented for determination in this appeal for reappraisement is (1) whether or not there is a foreign value, as defined in section 402a(c) of the Tariff Act of 1930, as amended, for such or similar merchandise, or (2) whether or not there is an export value, as defined in section 402a(d) of the Tariff Act of 1930, as amended, for such or similar merchandise.

The burden imposed upon the plaintiff in reappraisement appeals has been set forth by this court in *Geo. S. Bush & Co., Inc.* v. *United States*, 47 Cust. Ct. 505, Reap. Dec. 10099, page 511, as follows:

The law has long been settled in reappraisement cases concerning the burden cast upon one who challenges the correctness of the appraiser's valuation. 28 U.S.C., section 2633, provides as follows:

The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise.

Numerous decisions by this court and the United States Court of Customs and Patent Appeals have held that the appealing party, in order to sustain his burden of proof, must not only overcome this statutory presumption, but—

* * * it is incumbent upon appellant, the party challenging the value found by the appraiser in the first instance, to prove the action of the appraiser was erroneous and to establish some other dutiable value as the proper one. To do this, that party must meet every material issue involved in the case, and if he fails to do so the value fixed by the appraiser remains in full force and effect.

*Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495; *Kobe Import Co.* v. *United States*, 31 Cust. Ct. 456, A.R.D. 30; *G. & H. Transport Co., Inc.* v. *United States*, 27 C.C.P.A. (Customs) 159, C.A.D. 78; *West End Auto Wrecking Co., Inc.* v. *United States*, 31 Cust. Ct. 465, A.R.D. 31.

In the *West End Auto* case, *supra*, page 467, the court held:

It is well recognized that the party appealing for a reappraisement has the twofold burden of not only overcoming the statutory presumption of correctness attaching to the value found by the appraiser, but also of establishing the correct dutiable value of the merchandise in order to prevail. *Sears, Roebuck & Co.* v. *United States*, 31 C.C.P.A. (Customs) 36, C.A.D. 246; *Harry Garbey* v. *United States*, 24 C.C.P.A. (Customs) 48, T.D. 48332.

In the case at bar, the appraiser returned a value for the involved merchandise on the basis of statutory foreign value. In order to establish that this value was erroneous, and that some other value, spe-

cifically, the claimed United States value, was the proper value for appraisement purposes, it is incumbent upon the plaintiff to show that, at the time of exportation, such or similar merchandise was not freely offered for sale, for home consumption or for exportation to the United States, to all purchasers in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade. *H. S. Dorf & Co., Inc., et al.* v. *United States*, 41 CCPA 183, C.A.D. 548.

The first question for determination is whether the plaintiff has sustained the burden of establishing that, at or about the time of exportation, there did not exist a foreign value for the imported merchandise within the statutory requirements. Plaintiff contends that the affidavits introduced in evidence as plaintiff's exhibits 1 through 6 establish that there is no statutory foreign value for such or similar Thiourea. As heretofore noted, the affidavits in question, dated some 5 years after the date of exportation of the involved merchandise, contain statements to the effect that prices and terms of sale for home consumption in Japan varied and were dependent upon the bargaining ability of the purchaser and other circumstances. Plaintiff argues, accordingly, that there was no foreign value for the merchandise under consideration. However, it seems worthy of note that no list of sales is in evidence to establish the alleged varying prices to different categories for buyers. Further, the affidavits, upon which plaintiff relies to support its contention that there was no foreign value for the involved importation, are concerned solely with the business practices of but three manufacturers of Thiourea, in which connection the plaintiff alleges that these three companies were the only ones that manufactured, distributed, or sold such merchandise in Japan during the period in question. There is no proof, however, in the record before the court to support the conclusion that these three companies were the only manufacturers of such or similar merchandise in Japan, or that they were the only Japanese manufacturers which offer "such" or "similar" merchandise for sale for home consumption, or that there are no other Japanese manufacturers, distributors, or sellers which *freely* offer or sell such or similar merchandise for home consumption.

In order to negative the existence of a foreign value for the involved merchandise, it was incumbent upon the plaintiff to establish that neither "such," i.e., the merchandise under consideration, nor "similar" merchandise was freely offered or sold for home consumption to all purchasers in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade. *United States* v. *International Forwarding Co., Inc., a/c Ozalid Corporation*, 27 CCPA 21, C.A.D. 56; *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 CCPA 36, T.D. 43324. Assuming that the

trade practices of the three manufacturers, heretofore referred to, are as stated in the respective affidavits, this is not necessarily indicative of the trade generally and does not establish that "similar" merchandise by other dealers or manufacturers was not freely offered or sold for home consumption. Further, as heretofore noted, the affiants in the affidavits of the three manufacturers introduced in evidence allege that sales of Thiourea for home consumption were to dealers and subdealers and that no sales were made to consumers. However, defendant's exhibit A, the report, dated August 9, 1958, containing a list of sales of Thiourea for home consumption of Miike Gosei Chemical Industry Co., Ltd., the manufacturer of the merchandise here involved, indicates that, on or about the time of exportation of the merchandise in question, Miike Gosei company freely sold Thiourea to all consumers in Japan for home consumption at "Y240/250.00 per kg." The merchandise was appraised at "yen 240 per kg." In my opinion, the presumption of correctness attaching to the appraiser's finding of value has not been overcome.

The further contention of the plaintiff that the conditions as stated in the respective affidavits under which sales of Thiourea were made by the three manufacturers, including the involved manufacturer, preclude a finding of export value for such or similar merchandise under the provisions of section 402a(d), *supra,* is also, in my opinion, without merit. No probative evidence has been introduced showing that said three Japanese manufacturers and their exclusive export agents for the sale of Thiourea for exportation to the United States were the only Japanese manufacturers and/or the only Japanese exporters of such or similar Thiourea to the United States. It has likewise not been established that other dealers or manufacturers of similar merchandise did not freely offer or sell their product for exportation to the United States. Accordingly, the alleged restrictive nature of the sales of the merchandise at bar for exportation to the United States, does not, in itself, establish that there was no export value for such or similar merchandise to that imported.

Upon the record here presented, the court finds as facts:

1. The involved merchandise consists of Thiourea, manufactured by Miike Gosei Chemical Industry Co., Ltd., in Japan, and exported therefrom by Nippon Trading Co., Ltd., on March 11, 1958.

2. That said merchandise was appraised on the basis of foreign value, section 402a(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165.

3. That the record herein fails to establish that, at the time of exportation of the involved merchandise, such or similar merchandise was not freely sold or offered for sale for home consumption to all

purchasers in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade.

4. That the evidence adduced by the plaintiff fails to establish that the appraised value is erroneous and that another value claimed by the plaintiff is correct.

The court, therefore, concludes as a matter of law :

1. That the proper basis for the determination of the value of the involved merchandise is foreign value, as that value is defined in section 402a(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165.

2. That the presumption of correctness attaching to the appraiser's finding of value has not been overcome.

3. That the proper value of the merchandise under consideration is the appraised value.

Judgment will be entered accordingly.