(R.D. 11771)

R. J. SAUNDERS & CO., INC. *v.* UNITED STATES

Entry Nos. 840067, etc.

(Decided July 25, 1972)

*Sharretts, Paley, Carter & Blauvelt* (*Gail T. Cumins* of counsel) for the plaintiff.
*Harlington Wood, Jr.,* Assistant Attorney General (*Sheila N. Ziff* and *Bernard J. Babb,* trial attorneys), for the defendant.

WATSON, Judge: This is an instance in which plaintiff's otherwise soundly structured case has been undermined by a fundamental deficiency of proof. The appraisements of the imported thiourea[1] involved herein were made on the basis of foreign value, as defined in section 402a(c) of the Tariff Act of 1930, as amended by the Customs

---

[1] *The Merck Index* (5th ed. 1940), referred to solely for informative purposes unconnected to the legal issues herein, indicates that thiourea is also known as thiocarbamide and is used as a photographic fixing agent, to remove stains from negatives, in the manufacture of resins and as a vulcanization accelerator. A further helpful tidbit is a notation that when cut fruit are steeped in a dilute solution of thiourea they will retain their original color.

Simplification Act of 1956.[2] The appraised value was found to be 220 yen per kilogram, net packed.

In the seven appeals for reappraisement consolidated herein, plaintiff claims the basis of valuation should have been United States value, as defined in section 402a(e) of the Tariff Act of 1930, as amended, resulting in varying lesser values during the relevant years of 1958 to 1964.

This case presents the same issues as those raised in *R. J. Saunders & Co., Inc.* v. *United States*, 55 Cust. Ct. 666, R.D. 11099 (1965), the record of which has been incorporated herein.

The relevant statutory provisions read as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) EXPORT VALUE.—The export value of the imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

---

[2] Valuation under the so-called "old law" was required by reason of the importations' presence on the Final List of the Secretary of the Treasury, T.D. 54521.

It is fundamental that plaintiff, in order to reach its claimed United States value, must first disprove the existence of a foreign or export value for the imported merchandise, both of which are given statutory preference.[3] In its attempt to do so, plaintiff has adduced persuasive evidence that thiourea is not freely offered for sale either for home consumption or for exportation to the United States. However, the record is totally devoid of any evidence that "similar" merchandise is not freely sold in the prescribed manner. The following quotation from *United States* v. *Machado & Co.*, 6 Cust. Ct. 802, R.D. 5131 (1941), indicates the consequences which must flow from such an omission.

> In each of the statutory definitions of value above quoted, it is noted that value may be based on the price of either "such" or "similar" merchandise. If no such, that is, identical, merchandise is offered for sale in such a manner as to fall within either definition, then it must be established whether or not similar merchandise is so offered. If similar merchandise is so offered or sold under conditions complying with the statutory definition, then it may be resorted to in finding whether or not a foreign-market value or an export value exists. If there is a failure to show that no foreign value exists for similar merchandise, how can the court legally determine that there is no foreign value under the statute? It must necessarily follow, then, that where there is a complete failure to prove that there is no similar merchandise sold or offered for sale under conditions defined in the statute there is a fatal failure of proof.

In this case, plaintiff had two alternatives. It could either have proved there was no merchandise similar to thiourea or proved that similar merchandise, like thiourea itself, was not freely sold for home consumption or for export to the United States.

Since the record is devoid of any evidence from which conclusions on these questions can be reached, plaintiff has failed to satisfy the first of its burdens in this case and it is unnecessary to go further. See, *United States* v. *International Forwarding Co., Inc., a/c Ozalid Corporation,* 27 CCPA 21, C.A.D. 56 (1939).

In light of the above, I make the following findings of fact.

1. The imported merchandise consists of thiourea which was exported from Japan during the period from October 1958 through July 1964.

2. The merchandise was appraised on the basis of foreign value, as defined in section 402a(c) of the Tariff Act of 1930, as amended by

---

[3] (a) BASIS.—For the purposes of this Act the value of imported merchandise shall be—
    (1) The foreign value or the export value, whichever is higher;
    (2) If the appraiser determines that neither the foreign value nor the export value can be satisfactorily ascertained, then the United States value;

        *        *        *        *        *        *        *

the Customs Simplification, Act of 1956, at a value of 220 yen per kilogram, net packed.

3. The merchandise is described on the Final List of the Secretary of the Treasury, T.D. 54521.

4. The evidence herein fails to establish that at the times of exportation of the involved merchandise, similar merchandise was not freely offered for sale for home consumption or for exportation to the United States.

I therefore reach the following conclusions of law:

1. The proper basis of appraisement for the imported merchandise is foreign value, as defined in section 402a(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

2. The correct values for the imported merchandise are the appraised values.

Judgment will be entered accordingly.