(R.D. 11509)

INTERCONTINENTAL FIBRES, INC. v. UNITED STATES

Entry Nos. 743246–1/2; WH 4020–1/2; WH 5008–1/3.

(Decided April 11, 1968)

*William Whynman* and *Lane, Young & Fox* (*James G. McGoldrick* of counsel) ; *John D. Rode,* associate counsel; for the plaintiff.

*Edwin L. Weisl,`Jr.,* Assistant Attorney General (*Bernard J. Babb,* trial attorney), for the defendant.

FORD, Judge: The appeals for a reappraisement listed above, consolidated for the purpose of trial, cover certain 15 denier, 30 denier, and 40 denier type 6 nylon yarns manufactured by Snia Viscosa. The merchandise does not appear on the final list published in 93 Treas. Dec. 14, T.D. 54521, and was appraised on the basis of export value as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165. The values used by customs were based upon the prices of merchandise manufactured by Chatillon, which were $1.95 per pound, net packed, for 15 denier; $1.53 per pound, net packed, for 30 denier; and $1.32 per pound, net packed, for 40 denier nylon yarn.

Plaintiff does not dispute the basis of appraisement but contends the proper dutiable values are $1.70, $1.28, and $1.15 per pound, net packed, respectively, notwithstanding the fact that Snia Viscosa hereinafter referred to as "Snia," sold only to the plaintiff in the United States as a selected purchaser. It is the position of plaintiff that by virtue of the changes made by the Customs Simplification Act of 1956, *supra,* the sales to them may be. considered in determining export value since it is alleged the merchandise was freely sold at a price which fairly reflects the market value and was without restrictions as to the disposition or use of said merchandise.

The pertinent portions of the statute involved provide as follows:

Section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\*     \*     \*     \*     \*     \*     \*

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A)   to all purchasers at wholesale, or

(B)    in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

The record herein consists of the testimony of three witnesses called on behalf of plaintiff, two witnesses called on behalf of defendant, 14 plaintiff's exhibits, and 4 defendant's exhibits, as well as a stipulation of the parties to the effect that the involved merchandise consists of 15, 30, and 40 denier nylon yarn which does not appear on the final list, T.D. 54521; that export value is the proper basis of value for the imported merchandise; that the merchandise was appraised on the prices of merchandise manufactured by a company known as Chatillon of Milan, Italy; and that the 15 denier nylon yarn was entered at the unit invoice price of $1.70 per pound, net packed, ex-factory, and was appraised at $1.95 per pound, net packed, ex-factory, the 30 denier nylon yarn was entered at $1.28 per pound, net packed, ex-factory, and was appraised at $1.53 per pound, net packed, and the 40 denier nylon yarn was entered at $1.15 per pound, net packed, ex-factory, and was appraised at $1.32 per pound, net packed, ex-factory.

There is no dispute as to the basis of appraisement, the principal market, or usual wholesale quantity, nor that plaintiff is a selected purchaser. Hence, the issue is narrowed down to the question of whether the nylon yarn is freely sold without restrictions as defined in section 402(f) and whether the price fairly reflects the market value as well as "ordinary course of trade" as defined, *supra*.

At the outset, it is to be noted that while defendant contests the aspect of restrictions imposed by Snia, upon which the evidence is contradictory, it has admitted, and we so find, that there was sufficient evidence to establish that the restrictions as to disposition or use were not enforced. Such restrictions appear to have been observed more in its breach than in its enforcement. Hence, under the principles set forth in *United States* v. *Glanson Co.*, 47 CCPA 110, C.A.D. 740, the question of restrictions is also eliminated from the issue presented to the court.

The appraisement of the involved nylon yarn on the basis of export value of merchandise manufactured by Chatillon under section 402(b), Tariff Act of 1930, as amended, *supra*, is presumed by law to be correct. Plaintiff has the dual burden of establishing not only the incorrectness of the appraised value but a proper statutory value.

In the case at bar, it has been established that Chatillon, the manufacturer, conceded to be the one used by customs as a basis in the deter-

mination of value of the involved merchandise, did not sell nor offer for sale 15 denier yarn during the period involved. Nor did said company sell 30 denier yarn, other than two experimental shipments, during the period involved. The 40 denier yarn sold by Chatillon was shown to have included 4 percent commission and freight and delivery charges f.o.b. on board at Italian port. These facts relating to restrictions are set forth in an affidavit made by the managing director of Chatillon which was received in evidence as defendant's exhibit C. Plaintiff's exhibit 14 relating to the sales by Chatillon reads as follows:

During 1962 and for several years prior thereto, Chatillon exported to the United States 40 den nylon 6 dull and semidull. The average monthly quantity exported to the United States was relatively small compared to Chatillon average monthly quantities sold in Italy for domestic consumption and for exportation to other foreign countries. During 1962, the monthly average quantities exported to the United States approximated 14000 lbs. The unit price always included freight and expenses on board Italian seaport and a selling commission of 4%. The terms of sale for Italian consumption and for exportation to other foreign countries varied depending whether the unit price included freight, insurance, customs duties and all other expenses from factory to place of delivery. The unit price always included a selling commission. Credit was extended generally up to 180 days.

During and up to August 31, 1962, and prior thereto, Chatillon made a few shipments of 30 den nylon 6 yarn to the United States for experimental purposes. During and up to August 31 1962 Chatillon made only two shipments of such yarn to the United States and each shipment approximated 10000 lbs. The unit price included a selling commission of 4% and all expenses duty paid, delivered. During said period Chatillon did not sell or offer for sale 15 den nylon 6 yarn to the United States. Such yarn was sold in Italy for Italian consumption and also for exportation to other foreign countries.

The sale of two shipments of 30 denier nylon yarn for experimental purposes does not constitute the ordinary course of trade and such sales are, therefore, not considered for the purpose of determining value herein. Sales of 40 denier yarn would appear to be without restrictions when the statement contained in defendant's exhibit C "That sales for export to the United States are freely offered to all who wish to buy without any understanding as to its use or further resale," is considered. This statement is, however, in conflict with the report of the Treasury representative, received in evidence as defendant's exhibit B, which insofar as is pertinent reads as follows:

* * * He said that he has been export manager for about one year and that the only instance he could recall of refusing to sell to the United States concerned an offer received for merchandise he knew would be reexported to Argentina. He said that the firm does not wish to sell to purchasers who intend to resell to other markets where Chatillon is represented, although he knows that this has happened in the past since a type of nylon sold only to the United States showed up on the Mexican Market.

The obvious intent on the part of Chatillon is to restrict the resale of any merchandise it sells. Refusal to sell for the foregoing reasons establishes the enforcement of its restrictions on resale and removes such merchandise from being considered as being freely sold under the definition contained in section 402(f)(1), *supra*. In view of the foregoing, plaintiff has, therefore, established that the appraisement based upon Chatillon's prices was erroneous.

In an effort to establish the proper export value, plaintiff introduced evidence with respect to whether the sales to it as a selected purchaser were freely offered particularly with respect to said definition's reference to "which fairly reflects the market value."

The question of whether the price fairly reflects the market value was considered in *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841, wherein the court held it proper to consider any usual transactions in ascertaining the foregoing. The court therein had before it for determination the question of whether evidence of sales in the home market could be considered in a case where appraisement was made on the basis of constructed value and claimed to be properly subject to appraisement on the basis of export value. Evidence relative to sales in the home market was held by the appellate court to be properly subject to consideration by the Customs Court in determining whether the price fairly reflects the market value. The court therein found that sales in the home market at a higher price than those for export was a result of certain enumerated expenses which were not incurred in sales for export. When the additional expenses, not incurred in export sales, were deducted, the resulting price fairly reflected the sales price involved therein.

Subsequent to the decision in the *Acme* case, *supra*, there were a number of cases which attempted to follow the principles of the *Acme* case, *supra*, which presented evidence of a gross percentage of items of expense not included in export sales. The court has consistently rejected this type of proof as inadequate without a further showing of the amount of the proportion for each expense. *The American Greiner Electronic* v. *United States*, 57 Cust. Ct. 616, R.D. 11221 (rehearing granted); *C. J. Tower & Sons of Niagara, Inc.* v. *United States*, 57 Cust. Ct. 601, R.D. 11212, affirmed A.R.D. 233; *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 56 Cust. Ct. 653, R.D. 11152 (application for review dismissed, 57 Cust. Ct. 749, A.R.D. 213).

In the case at bar, the evidence as to the additional expenses incurred in sales in the home market which are not incurred in sales to the United States were set forth in percentages in plaintiff's exhibit 11 as follows:

| | |
|---|---|
| 15 denier | 27½% |
| 30 " | 21% |
| 40 " | 21% |

These percentages in sales in the home market, according to plaintiff's exhibit 11, include selling commission, expenses for credit, discounts, free delivery, free technical advice on the use of the yarn and machinery, free samples and survey, contributions toward customer advertising, considerable marketing, promotion and advertising activity which entails traveling and entertainment expenses by Snia, warehousing, trucking to and from warehouse, and insurance and labor costs in the handling of warehouse goods. Substantially similar statements are also contained in plaintiff's exhibits 9 and 13. Plaintiff's exhibit 11 also sets forth in percentages the additional expenses incurred by Snia in sales of 15 denier yarn to third countries, i.e., Canada, England, France, West Germany, East Germany, and Mexico. These percentages are indicated in said exhibit as running from 22 percent to 41½ percent and except for East Germany and Mexico including import duties as well as all costs of delivery. The prices ranged in United States dollars from $1.70 per pound for sales to plaintiff to $2.97 per pound for sales to England.

The 30 denier yarn which was sold to Denmark, England, France, Holland, Mexico, and Venezuela at percentages of additional expenses incurred by Snia in sales to those countries which were not incurred in sales to the United States ranged from 17½ percent to 39¾ percent, plus 7 pence per pound in sales to England, according to chart 2 of plaintiff's exhibit 11. The prices ranged in United States dollars from $1.28 per pound in sales to plaintiff to $1.79 per pound in sales to England.

The 40 denier yarn, according to plaintiff's exhibit 11, was sold to Australia, Canada, Denmark, England, France, Finland, West Germany, Holland, and Yugoslavia and had additional expenses not incurred by Snia ranging from 16½ percent to 39¾ percent, plus 7 pence per pound. The prices ranged in United States dollars from $1.15 per pound in sales to plaintiff to $1.78 per pound in sales to Yugoslavia.

The exhibit also states that all sales to plaintiff were made at ex-factory price, net, and all expenses from the factory to the United States were for the account of plaintiff. Sales to other countries except East Germany and Mexico cover all charges including duties delivered to the importer. East Germany had no import duty but assessed a 6 per centum ad valorem tax designated as "importation rights." Following the principles enunciated in the decisions, *supra*, I am unable to accept the percentages contained in plaintiff's exhibit 11 as sufficient evidence of fairly reflecting the market value without further allocation of such expenses.

In addition to the foregoing, plaintiff introduced and there was received in evidence plaintiff's exhibit 14, an affidavit of Luigi Pirola, managing director of Chatillon, the manufacturers of the merchandise

upon which customs based its appraisement, wherein the following statement was made:

I am aware that Snia Viscosa of Milan, Italy, a manufacturer of 15 den, 30 den and 40 den nylon 6 yarn, exported to the United States (Intercontinental Fibres, Inc. of New York, N.Y. U.S.A.) from January 1 1962 to August 31 1962, average monthly quantities of approximately 70000 lbs of 15 den nylon 6 yarn at $1.70 per pound, 75000 lbs of 30 den nylon 6 yarn at $1.28 per pound and 250000 lbs of 40 den dull and semidull nylon 6 yarn at $1.15 per pound. The terms were cash against documents and the unit price was net ex-factory involving no selling commissions or any expenses. All expenses and disbursements from factory to U.S. and customs duties were paid by Intercontinental Fibres Inc. and not incurred by Snia Viscosa. Also that all expenses generally incurred in connection with sales in Italy for Italian consumption and to other foreign countries were not incurred by Snia in connection with its sales for exportation to the United States.

In view of the substantially large average monthly quantities of 15 den, 30 den and 40 den nylon 6 exported by Snia Viscosa to the United States on terms of cash net ex-factory unit price and involving no selling commission and savings effected by Snia Viscosa in book-keeping records, handlings, no advances for customs duties, freight and all other charges and disbursements all incurred by Chatillon in its sales for domestic consumption and exportation to foreign countries, together with the savings in the cost of financing and earning of interest on the cash flow, the various Snia Viscosa unit prices above referred to fairly reflected the market value of the 15 den, 30 den and 40 den nylon 6 yarn on the dates of exportation to the United States.

Chatillon was always willing and ready to sell and offer the same quantities at the same Snia Viscosa unit prices under the same terms and conditions as sold by Snia Viscosa to Intercontinental Fibres Inc. of New York N.Y. U.S.A.

The statement of affiant, Luigi Pirola, that sales made under conditions outlined by him fairly reflected the market value is a conclusion of law reserved for the court to determine based upon established facts. The record as made, with respect to Chatillon does not contain any information as would substantiate this conclusion. A statement of this nature, in addition to not being binding upon the court, has no evidentiary value.

A willingness to sell without other evidence of overt communication or actual sales is lacking in probative value. See *Kuttroff Pickardt & Co. (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 176, T.D. 41698; *Delmonico International Corp.* v. *United States*, 52 Cust. Ct. 656, A.R.D. 176; *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495. I am aware that the quantum of proof necessary to establish whether the price fairly reflects the market value is not as great as is necessary to affirmatively establish a freely offered price. Never-

theless a mere statement of willingness to sell by a third party after the fact is in my opinion insufficient for the purpose of establishing that a price fairly reflects the market value.

In view of the foregoing, plaintiff, in my opinion, has failed to establish proper export value. It is well established law that an appraisement no matter how erroneous must stand unless and until plaintiff has established another value in conformity with the statutory requirements.

On the basis of the record presented, I find as facts:

1. That the merchandise consists of nylon yarn, type 6, in weights of 15 denier, 30 denier, and 40 denier.

2. The merchandise does not appear on the final list promulgated by the Secretary of Treasury, T.D. 54521.

3. That the parties have stipulated that the basis for appraisement is export value as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

4. That the merchandise was appraised on the basis of export value, *supra*, at the selling prices of nylon yarn manufactured by Chatillon for export to the United States at the following prices per pound:

|         |               |     |     |        |
| ------- | ------------- | --- | --- | ------ |
| 15 denier | United States dollars | | | $1.95 |
| 30 denier | " | " | " | 1.53 |
| 40 denier | " | " | " | 1.32 |

5. That during the period involved, Chatillon did not offer or sell 15 denier yarn to the United States.

6. That two shipments by Chatillon of 30 denier nylon yarn were not in the ordinary course of trade.

7. That sales of 40 denier yarn were restricted to end users.

8. That sales to Intercontinental Fibres, Inc., by Snia Viscosa were for statutory purposes sales to a selected purchaser at wholesale in the ordinary course of trade, without restrictions as to the disposition or use thereof.

9. The plaintiff has failed to prove that the entered or claimed value, which are prices to a selected purchaser, fairly reflected the market values of the imported merchandise for exportation to the United States at or about the time of exportation, in the ordinary course of trade.

10. The plaintiff has failed to prove values other than the appraised values.

I, therefore, conclude as matter of law:

1. The evidence does not overcome the presumption of correctness attaching to the appraised values of the merchandise.

2. That export value as defined in section 402(b), Tariff Act of 1930, as mended by the Customs Simplification Act of 1956, *supra*,

is the proper basis for the determination of value of the three items of merchandise covered by the appeals involved herein.

3. That said export values are the appraised values.

Judgment will be entered accordingly.