5. Said shoe is like or similar to the imported shoe.

We therefore make the following conclusions of law:

1. The presumption of correctness attaching to the appraisement has not been overcome.

2. The proper basis of appraisement for the merchandise in issue is American selling price as defined in section 402a(g) of the Tariff Act of 1930, as amended.

3. Said American selling price is represented by the appraised value.

Judgment will issue accordingly.

(A.R.D. 291)

UNITED STATES *v.* INTERCONTINENTAL FIBRES, INC.

Third Division, Appellate Term

(Decided June 28, 1971)

*L. Patrick Gray, III*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the appellant.

*Lane, Young & Fox* (*James G. McGoldrick* and *William H. Fox* of counsel) for the appellee.

Before RICHARDSON, LANDIS, and WATSON, Judges; LANDIS, J., concurring.

RICHARDSON, Judge: The instant application was filed by the Government for a review of the decision and judgment of a single judge, sitting in reappraisement in *Intercontinental Fibres, Inc.* v. *United States*, 64 Cust. Ct. 618, R.D. 11692, decided January 22, 1970 on rehearing, and holding that export value, as represented by the entered values contended for by the importer-appellee, constitutes the proper dutiable value of nylon yarn exported from Italy and entered at the port of New York. The merchandise at bar, covered by three reappraisement appeals which were consolidated for trial, consists of 15,

30, and 40 denier nylon yarn, type 6, which was manufactured in and exported from Milan, Italy, in July, 1962, by Società Nazionale Industria Applicazioni Viscosa of Milan, Italy, commonly known in the textile trade by the abbreviated name Snia Viscosa, to appellee, the importer and sole United States distributor for Snia Viscosa. The imported yarns at bar were entered and appraised under the export value basis of valuation as defined in 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) at the following prices:

| Nylon yarn | Entered value | Appraised value |
| --- | --- | --- |
| 15 denier | $1.70 lb., net pkd. | $1.95 lb., net pkd. |
| 30 denier | 1.28 lb., net pkd. | 1.53 lb., net pkd. |
| 40 denier | 1.15 lb., net pkd. | 1.27–1.32 lb., net pkd. |

It is conceded that the involved merchandise is not on the final list promulgated by the Secretary of the Treasury in T.D. 54521, and that export value is the proper basis for appraisement of the merchandise. The parties also agree that appraisement of the yarns at bar was based upon "similar" merchandise manufactured in Italy by Chatillon S.p.A. of Milan for exportation to the United States. The record shows that at the time of appraisement of the involved merchandise in September and October of 1962, customs officials were in possession, among other things, of (1) a copy of Snia Viscosa's contract of exclusivity with appellee, dated September 9, 1959 (defendant's exhibit A), under which appellee was obligated "not to re-sell in its original state the merchandise to wholesalers, jobbers and dealers, it being clearly understood that [appellee was to] re-sell exclusively to end-users"; and (2) a letter from Chatillon, dated July 28, 1959 (see defendant's exhibit C), indicating, among other things, "That sales for export to the Unites [sic] States are freely offered to all who wish to buy without any understanding as to its use or further resale."

Evidence presented by appellee before the trial court was introduced with a view toward negating the existence of an export value for the involved merchandise based upon "similar" merchandise manufactured by Chatillon, establishing that restrictions on the resale of the imported yarns at bar by appellee were either non-existent or not enforced, and establishing that the prices paid by appellee for the imported yarns in issue as a selected purchaser were fairly reflective of the market value thereof as determined by home market sales. And evidence introduced into the record by appellant was presented with a view toward sustaining the appraisement of the imported merchandise on the basis of Helion yarn manufactured by Chatillon. Helion is the trade name under which Chatillon markets its type 6 nylon

yarn; and Lilion is the trade name under which Snia Viscosa markets its type 6 nylon yarn.* Thus, it is apparent that at the relevant times here involved Chatillon and Snia Viscosa were competitors in the Italian synthetic yarn manufacturing industry.

In its original opinion rendered in the case, reported as *Intercontinental Fibres, Inc* v. *United States*, 60 Cust. Ct. 816, R.D. 11509 (1968), the trial court ruled that the appraisement of the involved yarn on the basis of Chatillon's prices was erroneous. However, the trial court found that the record lacked proof of a different export value conforming to statutory requirements, and, accordingly, sustained the appraised values.

In its opinion rendered in the case on rehearing in R.D. 11692, the trial court found that appellee had supplied the proof it found lacking in the original record with respect to a different export value, and accordingly, sustained the entered values as representing prices to a selected purchaser which fairly reflected the market value of the imported yarns in compliance with statutory requirements.

The case is here under some 11 assignments of error attacking the decisions of the trial court. It is to be noted that in its initial brief submitted to the court after trial appellant did not undertake. to defend the appraisements herein as such, but instead confined its opposition to arguments against the values contended for by appellee under the protection of the presumption of correctness. However, on rehearing before the trial court, and before us by appropriate assignments of error, appellant does undertake to defend the appraised values *per se*, thereby necessitating the examination of the appraisement phase of the case by us *vis-a-vis* the evidence at bar. It is well settled that the assignments of error on appeal, and not the points discussed in the briefs, determine the questions presented to an appellate court for review. *United States* v. *J. L. Galef*, 18 CCPA 180, 184, T.D. 44377 (1930); *Nichols & Company, Inc.* v. *United States*, 64 Cust. Ct. 849, A.R.D. 271, decided April 10, 1970, appeal pending.

With respect to the appraised values appellant contends by way of assignments of error that the trial court erred:

2. In not finding and holding that the proper dutiable values are represented by the appraised values on the basis of export value as defined in Section 402(b), *supra*.

　　　*　　　*　　　*　　　*　　　*　　　*　　　*

9. In finding and holding that the appraisement of the 30 and 40 denier yarn was erroneous as it was based upon the sales of 30 denier yarn sold by Chatillon of Milan, Italy, for exportation to the United States.

*See Guidebook to Man-Made Textile Fibers and Textured Yarns of the World, Third Edition (1969), pages 149, 150, published by The United Piece Dye Works.

10. In not finding and holding that the appraisement of the 30 and 40 denier yarn based upon sales by Chatillon for exportation to the United States was correct.

On the subject of the appraised values the trial court stated in its opinion in R.D. 11509 as follows:

In the case at bar, it has been established that Chatillon, the manufacturer, conceded to be the one used by customs as a basis in the determination of value of the involved merchandise, did not sell nor offer for sale 15 denier yarn during the period involved. Nor did said company sell 30 denier yarn, other than two experimental shipments, during the period involved. The 40 denier yarn sold by Chatillon was shown to have included 4 percent commission and freight and delivery charges f.o.b. on board at Italian port. These facts relating to restrictions are set forth in an affidavit made by the managing director of Chatillon which was received in evidence as defendant's exhibit C. . . .

At this point the trial court called attention to plaintiff's exhibit 14, an affidavit of Luigi Pirola, Chatillon's export manager, sworn to on June 10, 1965, whom the trial court described as Chatillon's managing director. The court quoted the second and third paragraphs of plaintiff's exhibit 14, and then said:

The sale of two shipments of 30 denier nylon yarn for experimental purposes does not constitute the ordinary course of trade and such sales are, therefore, not considered for the purpose of determining value herein. Sales of 40 denier yarn would appear to be without restrictions when the statement contained in defendant's exhibit C "That sales for export to the United States are freely offered to all who wish to buy without any understanding as to its use or further resale," is considered. This statement is, however, in conflict with the report of the Treasury representative, received in evidence as defendant's exhibit B, which insofar as is pertinent reads as follows:

* * * He said that he has been export manager for about one year and that the only instance he could recall of refusing to sell to the United States concerned an offer received for merchandise he knew would be reexported to Argentina. He said that the firm does not wish to sell to purchasers who intend to resell to other markets where Chatillon is represented, although he knows that this has happened in the past since a type of nylon sold only to the United States showed up on the Mexican Market.

The trial court then concluded its opinion on the matter of the appraised values as follows:

The obvious intent on the part of Chatillon is to restrict the resale of any merchandise it sells. Refusal to sell for the foregoing reasons establishes the enforcement of its restrictions on resale and removes such merchandise from being considered as being

freely sold under the definition contained in section 402(f)(1), *supra.* In view of the foregoing, plaintiff has, therefore, established that the appraisement based upon Chatillon's prices was erroneous.

We find the trial court's reference to defendant's exhibit C to be factually incorrect. Exhibit C is not an affidavit of Chatillon's managing director. It is a letter addressed to the U.S. Appraiser of Merchandise at the port of New York [subsequent to the date of the involved appraisements] by Chatillon's export manager, Luigi Pirola, in which the writer's signature, signed "L Pirola," has merely been authenticated by a United States consular official under date of October 25, 1962. As the trial court indicated in its opinion noted above, exhibit C standing by itself rules out any notion of the existence of restrictions insofar as Chatillon's export operations to the United States are concerned. Exhibit C states:

> With reference to our letter to you dated 28th July 1959, we wish to advise that there has not been any change in our selling policy both in Italy and for exportation to the United States.

> We can then repeat again our statement as contained in the above letter referring to Helion synthetic yarn and reading as follows:
>
> 1. That sales in Italy for consumption in Italy are sold only to such buyers who will further process and/or further manufacture our product.
> 2. That failure to adhere to this policy results in our refusal to sell these customers any further merchandise.
> 3. That sales for export to the Unites [sic] States are freely offered to all who wish to buy without any understanding as to its use or further resale.

In our opinion exhibit C is a corollary to the treasury representative's report dated July 9, 1962 and addressed to the appraiser at New York, which report was received in evidence as defendant's exhibit B. The object of exhibit B to which credence was given by the trial court over exhibit C was to update the information already on file with the appraiser concerning Chatillon's practices. The report clearly indicates, among other things, that the interviewee, Luigi Pirola, was struggling with the legal concept as to whether or not there were restrictions imposed by Chatillon upon the sale of its merchandise, and this, from a layman's point of view. The report concludes with a statement by Pirola that he would give the matter further study and would inform the interviewer's office when a decision had been reached. Consequently, it is clear to us from the evidence that the matter of restrictions was left open for further determination. As such, we do not read exhibit C as being contradictory of exhibit B on the matter of restric-

tions, but rather as being supplementary to exhibit B on this question, finally disposing of the question in favor of the absence of restrictions.

But even if the statements in exhibit B to which reference was made by the trial court in its opinion in R.D. 11509 on the subject of restrictions can be said to amount to a restriction imposed on the resale of Chatillon's merchandise when sold for exportation to the United States, it would be a restriction which has the sanction of law. Selectivity of a United States purchaser on the part of a foreign exporter with a view toward limiting the territory within which such purchaser is permitted to resell the exported merchandise constitutes a statutorily permissible restriction. See 19 U.S.C.A., section 1401a(f)(1)(B)(ii). We, therefore, agree with appellant that such a state of facts would not constitute a deterrent to the existence of statutory export value based upon export sales of Chatillon's 40 denier yarn, or, for that matter, its other denier yarns.

With respect to Chatillon's 30 denier yarn, we do not find it necessary in this case to determine whether the particular so-called experimental sales discussed in the opinion of the trial court were in the ordinary course of trade. There is no evidence of record that Chatillon did not *offer* to sell its 30 denier yarn in accordance with the ordinary course of trade. Bearing in mind the basis of appraisement adopted in this case, the statutory presumption of correctness presumes that Chatillon's merchandise was offered for sale in accordance with the statutory formula if in fact it was not actually *sold* in accordance with such formula, *Cf. Aceto Chemical Co., Inc.* v. *United States*, 51 CCPA 121, 125, C.A.D. 846 (1964). And it would be incumbent upon the party attacking the appraised values, in this case the appellee, to present evidence establishing that Chatillon neither sold nor offered to sell its merchandise, that is, the 30 denier yarn, in accordance with the ordinary course of trade. Since such broad-based proof was not presented in this case, the presumption of correctness affecting the appraisement of the 30 denier yarn survives appellee's proofs regarding Chatillon's *sales* of such merchandise for exportation to the United States, as a matter of law in any event.

With respect to the 15 denier yarn, the trial court found that Chatillon did not sell or offer for sale 15 denier yarn during the period involved. This statement is based upon plaintiff's exhibit 14, wherein the affiant, Luigi Pirola, states under date of June 10, 1965:

> ... During said period Chatillon did not sell or offer for sale 15 den nylon 6 yarn to the United States. Such yarn was sold in Italy for Italian consumption and also for exportation to other foreign countries.

Exhibits 10 and 14 materially differ in content with respect to the 15 denier yarn offerings to the United States. Exhibit 10 states:

During the past several years, Chatillon made a few shipments of 30/d nylon 6 yarn to the United States for experimental purposes. During the current year, Chatillon made only two shipments of such yarn to the U.S. and each shipment approximated 10,000 lbs. The unit price also included a selling commission of 4% and all expenses to U.S. including U.S. Customs duties. From 1959 to date Chatillon did not sell or offer for sale 15/d and 45/d nylon 6 yarn to the U.S. However, such yarn was sold in Italy for Italian consumption and also exported to other foreign countries.

But elsewhere, exhibit 10 goes on to state:

There has been a steady and continuous decline in market prices of 15/d nylon 6 yarn not only in Italy for domestic consumption but also for exportation to the United States and other foreign countries. The market prices for the 30/d and 40/d nylon has kept relatively steady compared to the substantial variations of the market prices of 15/d nylon 6 yarn. * * *

In exhibit 14 the latter statements in exhibit 10 do not appear at all.

Exhibit 14 states:

During and up to August 31 1962, and prior thereto, Chatillon made a few shipments of 30 den nylon 6 yarn to the United States for experimental purposes. During and up to August 31 1962 Chatillon made only two shipments of such yarn to the United States and each shipment approximated 10000 lbs. The unit price included a selling commission of 4% and all expenses duty paid, delivered. During said period Chatillon did not sell or offer for sale 15 den nylon 6 yarn to the United States. Such yarn was sold in Italy for Italian consumption and also for exportation to other foreign countries.

If credence is given to exhibit 10, affiant Pirola is saying in one breath that 15 denier yarn was not sold or offered to the United States between 1959 and October 25, 1962, which period includes the dates of exportation of the subject merchandise; and, in another breath, is saying that 15 denier yarn was offered to all markets including the United States although at declining and unsteady prices. On the other hand if credence is given to exhibit 14, affiant Pirola is saying only that 15 denier yarn was not sold or offered to the United States market during the month of August, 1962, which, of course, is beyond the period of exportation of the subject merchandise. The expression "During said period" which prefaces the last sentence quoted above from exhibit 14 has reference to the period "During and up to August 31 1962" which is contained in the preceding sentence noted above.

Pirola's vacillation on the matters found to be at variance in exhibits 10 and 14 may be attributable to the fact that Pirola had been under some pressure, from Snia Viscosa, Chatillon's competitor in Milan, Italy, to support Snia Viscosa's prices as a basis for appraise-

ment of nylon 6 yarns exported from Milan to the United States. In this connection, Treasury Representative Edward L. Hughes, states in exhibit B :

> This question [Chatillon's policy relative to merchandise freely offered for exportation to the United States] was referred to Mr. Storchi of Chatillon in a telephone conversation in April and he stated that a new statement would be submitted and that he would inform this office when it had been prepared. Nothing further was heard from the firm and I therefore visited the offices of Chatillon, S.p.A., at Via Conservatorio 7, Milan, on July 4, 1962, where I interviewed Mr. Luigi G. Pirola, export manager.
>
> Mr. Pirola said that the delay in furnishing the new statement was due to the fact that Snia Viscosa had advised Chatillon that it appeared possible that Snia's shipments of nylon filaments and yarn for some period in the past might be appraised on the basis of Chatillon's higher export price and that this would entail additional duties amounting to a very large amount of money. Mr. Pirola said that Snia Viscosa further advised that on the basis of its knowledge of Chatillon's shipments to the United States it appeared that the merchandise was not freely offered within the meaning of the Tariff Act but was restricted to several purchasers, and that Snia requested Chatillon to consider whether it might not be able to furnish U.S. Customs with evidence showing that sales to the United States are restricted.
>
> Mr. Pirola said that his knowledge of the Tariff Act was very imperfect but that he was willing to be helpful to Snia if the circumstances permitted it to be done honestly. He said that a statement was therefore prepared which set forth that sales had been made only to the four or five firms who have purchased from Chatillon. This statement was submitted to Mr. Beale, the firm's agent in New York, who objected that its wording was not correct. Chatillon then asked Beale to obtain an opinion from a competent attorney in the United States and the matter was submitted to the firm Sharetts [sic], Paley & Carter for their advice. Mr. Pirola said that Chatillon was advised by Sharetts [sic], Paley, and Carter that on the information submitted to them the draft statement would not be true.

Against this background of action we are of the opinion that the proofs subsequently marshalled by appellee in the form of the affidavits contained in exhibits 10 and 14 reveal a conflict and indecision on the matter of Chatillon's offerings of 15 denier nylon yarn to the United States, among other things. Consequently, we find these affidavits to be of no probative value on that issue. And since there is no other evidence in the record relating to Chatillon's offerings of 15 denier yarn to the United States, we are obliged to disagree with the trial court as to the effect of the evidence relating to this subject. We are of the opinion that there is no competent, credible evidence

of record to the effect that Chatillon did not sell or offer to sell to the United States market during the relevant times its 15 denier nylon yarn, and so hold.

In view of our findings herein on the evidence and the law, we conclude that appellee has failed to prove the appraisements of the merchandise at bar to be in error or to rebut the presumption of correctness attaching thereto. Appellant's assignments of error numbered 2, 9, and 10 are therefore, sustained. And in view of this conclusion we do not reach the other assignments of error filed by appellant or the questions to which they relate in this case.

On the record before us, we find as facts:

1. That the merchandise herein consists of 15, 30, and 40 denier nylon yarn, type 6, manufactured in and exported from Milan, Italy, during July, 1962, by Snia Viscosa.

2. That said merchandise was appraised upon entry at the port of New York in accordance with export value as defined in 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) on the basis of prices for "similar" merchandise manufactured in and exported from Italy to the United States by Chatillon, S.p.A. of Milan, Italy.

3. That there is no competent, credible evidence of record that at the time of exportation of the said imported merchandise that the said "similar" merchandise of Chatillon manufacture was not freely sold or, in the absence of sales, offered for sale in the principal markets of Italy in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States at prices equal to the appraised values of the said imported merchandise.

And on these facts we conclude as matters of law:

1. That the evidence of record does not rebut the presumption of correctness which attaches to the appraised values herein.

2. That export value as defined in 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) is the proper basis for determination of the value of the merchandise covered by the reappraisement appeals herein.

3. That such value is represented herein by the appraised values.

The judgment of the trial court is reversed, and judgment will be entered herein accordingly.

LANDIS, Judge: I concur in the result.

However, I question the basis of Judge Richardson's reversal which is put on the ground there was no competent, credible evidence to rebut the presumptively correct appraised statutory export value predicated upon the prices at which "similar" merchandise was sold for export to the United States.

The trial judge had found for appellee-importer on its appeal for reappraisement holding it had proved on an export value basis the prices at which the imported merchandise ("such" merchandise in the vernacular of the export value statutory definition) was invoiced and entered fairly reflected the market value to a selected purchaser. Cf. *United States* v. *Joseph Tanous*, 53 CCPA 129, C.A.D. 889 (1966) ; *Kobe Import Co.* v. *United States*, 42 CCPA 194, 198, C.A.D. 593 (1955). Assuming the record supports the values found by the trial judge for "such" merchandise, I am doubtful that under section 402, as amended, Judge Richardson's above-mentioned finding as to the existence of evidence of "similar" merchandise is sufficient to upset the trial judge's finding for appellee-importer on the basis of "such" merchandise. Cf. *United States* v. *F. W. Myers & Co., Inc.*, 63 Cust. Ct. 706, 716, A.R.D. 264, 306 F. Supp. 1396 (1969).

Nonetheless, in reviewing the record, I am hesitant to accept appellee-importer's theories behind the so-called "advertising allowances" – "made in cooperation with customers"; the so-called "reserve for bad debts included in the prices to such markets"; and the so-called "nuisance expenses" – "related to limited quantity sales" recited in exhibit 17, without some further proof that, aside from theory, the items are acceptable in the accounting practice of fixing cost-price relationships. Not, therefore, being satisfied that the proofs substantially establish that the invoice and entered prices of the imported merchandise fairly reflect the market value to a selected purchaser at wholesale in the ordinary course of trade, I concur in the result.